WAL–MART STORES, INC., Appellant,

v.

Eileen S. MIDDLETON, Appellee.

No. 04–96–01017–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 12, 1998.

Rehearing Overruled Oct. 26, 1998.

J. Preston Wrotenbery, Kevin D. Jewell, Charles T. Jeremiah, Magenheim, Bateman, Robinson, Wrotenbery & Helfand, Houston, for Appellant.

Franklin Y. Wright, Law Offices of Franklin Y. Wright, San Antonio, Robert M. Stone, Law Offices of Robert M. Stone, San Antonio, for Appellee.

Before STONE, GREEN and ANGELINI, JJ.

## OPINION

GREEN, Justice.

Eileen Middleton was injured in a Wal-Mart store when she tripped on an alleged defect in the floor. Middleton brought a personal injury cause of action against Wal-Mart and a jury found in her favor. Wal-Mart appeals the judgment complaining, among other things, that the jury charge was erroneous. Finding harmful error in the jury charge, we reverse and remand.

### Background

On December 6, 1993, Middleton, her mother, Evelyn LeMaire, and her daughter, Kathy Jordan, were shopping at the Wal-Mart in Nederland, Texas. After entering the store, Middleton went to the restroom while her mother and daughter began shopping. Middleton then met back up with her mother and began pushing their shopping cart. While rounding the corner of an aisle, Middleton's heel "caught on something," and she fell. After temporarily losing consciousness, Middleton was aroused by smelling salts and was taken to a hospital by emergency personnel.

While on the floor, Middleton heard someone say, "Look, that's what you probably fell on." In addition, she also heard a Wal-Mart employee say the floor needed to be repaired immediately. It was not until Middleton was lifted from the floor after her fall that she noticed the hole in the floor. Inconsistent testimony from both parties described the hole as a break in the floor ranging from one-eighth of an inch to three inches deep. Middleton, her mother, and her daughter also stated they saw a metal object, like a pipe, embedded in the floor with its top portion protruding.

After Middleton was taken to the hospital, Lisa Canales, a Wal-Mart department manager, took two Polaroid photographs of the area involved in the accident. The photos were then attached to an accident report and sent to Wal-Mart's corporate headquarters in Arkansas. At the time of trial, however, the photos could not be located. As a result of Wal-Mart's failure to produce the photos, the trial court submitted the following spoliation instruction to the jury over Wal-Mart's objection:

> You are instructed that w[h]ere evidence, such as photographs of the accident scene, was peculiarly within the control of Wal-Mart and Wal-Mart fails to produce that evidence, you must presume that the missing evidence, if offered, would have been unfavorable to Wal-Mart. You are further instructed that such presumption may be rebutted by Wal-Mart.

### Discussion

In its first point of error, Wal-Mart argues that the jury instruction on spoliation was improper and resulted in harmful error. We agree.

#### 1. Standard and Scope of Review

We review error in the jury charge with the abuse of discretion standard of review. *See Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990); *H.E. Butt Grocery Co. v. Bilotto*, 928 S.W.2d 197, 199 (Tex.App.—San Antonio 1996), *aff'd*, 41 Tex. Sup.Ct. J. 1213, 1998 WL 388586, — S.W.2d — (July 14, 1998). A trial court

abuses its discretion by acting arbitrarily, unreasonably, or without consideration of guiding principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–242 (Tex.1985).

■ When submitting the jury charge, a trial court is afforded more discretion when submitting instructions than when submitting questions. *Perez v. Weingarten Realty Investors,* 881 S.W.2d 490, 496 (Tex.App.—San Antonio 1994, writ denied). However, the discretion afforded during the submission of instructions is not absolute. *See* TEX.R. CIV. P. 277. According to Rule 277, a trial court must submit instructions "as shall be proper to enable the jury to render a verdict." *Id.*

■ For an instruction to be proper, it must: (1) assist the jury, (2) accurately state the law, and (3) find support in the pleadings and evidence. TEX.R. CIV. P. 277, 278. All three requirements must be met for the instruction to be proper; therefore, if an instruction correctly states the law, but does not assist the jury, it is improper. *Riggs v. Sentry Ins.,* 821 S.W.2d 701, 704–05 (Tex.App.—Houston [14th Dist.] 1991, writ denied). An instruction that misleads the jury is improper, and submitting an unnecessary instruction will require reversal if the instruction is harmful. *See Boaz v. White's Auto Stores,* 141 Tex. 366, 172 S.W.2d 481, 484 (1943); *European Crossroads' Shopping Ctr., Ltd. v. Criswell,* 910 S.W.2d 45, 53–54 (Tex.App.—Dallas 1995, writ denied).

## 2. Spoliation

■ Generally, two rules apply to presumptions that arise from the nonproduction of evidence. One rule is that the deliberate spoliation of evidence relevant to a case raises a presumption that the evidence would have been unfavorable to the cause of the spoliator. *H.E. Butt Grocery Co. v. Bruner,* 530 S.W.2d 340, 344 (Tex.Civ.App.—Waco 1975, writ dism'd). Middleton acknowledges there is no evidence of deliberate destruction of the photographs; thus, the first rule is inapplicable in this case.

■ The second rule comes into play when the party controlling the evidence does not produce it and ***does not testify***. *Id.* at 343–

44. The party's failure to produce evidence within his possession or to testify about it creates a rebuttable presumption unfavorable to that party, which of itself has probative value. *Id.* Focusing on the second rule, Wal–Mart relies on *Brewer v. Dowling,* 862 S.W.2d 156 (Tex.App.—Fort Worth 1993, writ denied) to argue that the instruction was unwarranted because Wal–Mart employees testified about the floor. *See id.* at 159 (evidence did not entitle plaintiff to spoliation instruction because defendant presented evidence to rebut plaintiff's harmful evidence). Wal–Mart points to the testimony of its employees, Canales and Ross, who said there was only a broken tile in the floor. Canales explained that the missing tile did not create a hole; the break in the floor surface was no deeper than an inch; and there was not a protruding screw or metal rod. She further did not observe any broken tile pieces surrounding the area.

Middleton relies instead on *Watson v. Brazos Elec. Power Co–op., Inc.,* 918 S.W.2d 639 (Tex.App.—Waco 1996, writ denied) (per curiam) to argue that the trial court did not abuse its discretion in submitting the instruction. *Id.* at 643–44. In *Watson,* the missing evidence was a cross-bar of a utility pole which, due to its allegedly poor condition, started a fire that destroyed plaintiff's property. *Id.* at 642. The plaintiff offered testimony that the cross-bar had been compromised by woodpecker holes; the defendant countered with testimony that it found no woodpecker holes. *Id.* at 642–43. Reversing the trial court on the failure to submit a spoliation instruction, the Waco court distinguished its case from *Brewer* on the basis of the "type of rebuttal evidence which precludes the application of the spoliation presumption." *Id.* at 643. The *Watson* court noted that the defendants in *Brewer* came forward with evidence which was made contemporaneously with the missing evidence, therefore rendering their rebuttal evidence trustworthy. *Id.* Finding that the defendant's testimony lacked the same trustworthiness, the *Watson* court held that Watson was entitled to an instruction. Although the *Watson* court did not expressly rest its decision on intentional destruction, the opinion suggests the cross-arm was intentionally de-

stroyed, bringing the case closer to the first rule for allowing a spoliation instruction, rather than the second rule. Further, the *Watson* court may have been overreaching in its attempt to distinguish *Brewer.* The *Brewer* court correctly noted that the second rule regarding spoliation instruction comes into play when there is no evidence or offer of evidence to rebut the opponent's harmful evidence; the *Brewer* court did not base its decision on the "type" of evidence the defendants brought forward. As both *Bruner* and *Brewer* suggest, the second rule should be implicated only when a party is in control of relevant evidence and he fails to produce it or offer testimony explaining its non-production to rebut his opponent's harmful evidence. Here, Canales provided a reasonable explanation concerning the absence of the photographs, and testified about what she remembered to be depicted in them, thereby eliminating Middleton's entitlement to the instruction. For this reason, the spoliation instruction should not have been given.

### 3. Harm Analysis

 Because we hold the trial court's instruction was improper, we now determine whether the submission of the spoliation instruction resulted in harmful error. *See* Tex. R.App. P. 44.1(a)(1). For harmful error to occur, the error must amount to a denial of a party's rights that it probably caused rendition of an improper judgment. *Id.*

 Reversible error can result from unnecessary jury instructions that focus the jury's attention on issues that do not belong in the case. *See Lemos v. Montez,* 680 S.W.2d 798, 799 (Tex.1984); *Accord v. General Motors Corp.,* 669 S.W.2d 111, 114 (Tex. 1984). The error becomes harmful because "[t]he court's instructions become the law of the case and are to be accepted by the jury as the guide on which they must rely." *Texas Power & Light Co. v. Lovinggood,* 389 S.W.2d 712, 717 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.); *accord Watson,* 918 S.W.2d at 643.

Here, a spoliation instruction was submitted to the jury even though any presumption operating against Wal–Mart concerning the photographic evidence had been legally re-butted. The result was that the jury's attention was erroneously focused on the failure to produce the photographs as some evidence of Wal–Mart's negligence. Middleton's attorney compounded the harmful effect of the instruction by referring to it in closing argument:

> [Wal–Mart] knew the day after the accident after talking with this lady that she said there was a hole in there, they have had those pictures—*if Wal–Mart fails to produce the evidence you must presume that the missing evidence if offered would have been unfavorable to Wal–Mart.* Folks, if those pictures were any good for Wal–Mart, every single one of us here knows that they would have had them down here blown up as big as Dallas for you to look at them to show that the floor was okay. But they are not here.

The instruction essentially required the jury to consider Wal–Mart's failure to produce the photographs as probative evidence of its liability, thus forcing Wal–Mart to overcome an evidentiary presumption that did not exist in this case. The proper question for the jury was whether Wal–Mart breached its duty of care to Middleton, not whether Wal–Mart failed to produce photographs from its file.

The dissent argues that, regardless of the instruction, based on the evidence presented at trial the jury could itself determine that Wal–Mart had rebutted the spoliation presumption. This argument overlooks the fact that whether the spoliation presumption had been rebutted is an evidentiary ruling to be made by the trial judge—it is not a fact question for the jury. To ask the jury to decide when to apply the presumption is to ask them to rule on a legal question.

We have determined as a matter of law that the spoliation presumption should not apply against Wal–Mart. However, the jury was instructed to the contrary—that the presumption *did* apply unless the jury determined it had been rebutted. Wal–Mart was harmed because the instruction had the effect of partially shifting the burden of proof. To successfully defend the case, Wal–Mart was required to persuade the jury that it had rebutted the spoliation presumption. The

consequence of its failure to carry this burden was to award Middleton the benefit of not having to prove essential elements of her premises liability cause of action. Wal–Mart should not have had this burden of persuasion at trial.

### Conclusion

The trial court's erroneous spoliation instruction was unduly confusing and misleading. We conclude that it caused the jury to reach an improper verdict, which ultimately led to the rendition of an improper judgment. Accordingly, we sustain Wal–Mart's first point of error.

Because Wal–Mart's first point of error is dispositive, we need not address its remaining points of error. The judgment of the trial court is reversed and the cause is remanded for a new trial.

Dissenting opinion by STONE, J.

STONE, Justice, dissenting.

Although the majority has correctly determined the trial court erred in submitting the spoliation instruction, I believe the majority has erred in its harm analysis. I therefore dissent.

Even assuming the spoliation instruction was wrongfully submitted, Wal–Mart has failed to show that the instruction caused or likely caused the rendition of an improper verdict. *See* TEX.R.APP. P. 44.1(a)(1). Contrary to the majority's conclusion that "[t]he instruction essentially required the jury to consider Wal–Mart's failure to produce the pictures as probative evidence of its liability," the instruction merely set forth a rebuttable presumption. As briefly, but correctly, noted by Middleton's counsel during closing argument, the jury was to presume the missing photographs were unfavorable to Wal–Mart only if Wal–Mart failed to produce evidence about the hole in the floor. Wal–Mart did produce evidence about why the photographs were not introduced (they were sent to Wal–Mart's headquarters and at the time of trial were inexplicably missing), and it produced evidence about the hole in the floor. Regardless, from both party's accounts, the jury learned that something was wrong with the floor. Based on the evidence presented at trial, the jury could have reasonably: (a) believed Wal–Mart's explanation regarding the absence of the pictures; (b) determined that Wal–Mart's evidence rebutted any spoliation presumption; and (c) concluded that Middleton's evidence regarding the condition of the floor outweighed Wal–Mart's evidence. In any event, the jury could reasonably have determined that Wal–Mart had rebutted the spoliation presumption. There is absolutely nothing in this record to support the majority's holding that the spoliation instruction was "unduly confusing and misleading. . . ."

The majority concludes that submission of the spoliation instruction effectively asked the jury to rule on a legal question—whether the spoliation presumption had been rebutted. While this may be the effect of the erroneous submission of the instruction, it is not evidence of harm. Under the record before us, we cannot conclude that harm occurred.

The conflicting testimony regarding the depth of the hole and whether a metal object was protruding from the hole was for the jury to resolve. The jury had sufficient evidence before it to conclude either that the hole did or did not constitute a negligent condition for which Wal–Mart was liable. The jury decided that Wal–Mart was seventy per cent negligent, and we should not disturb their finding. Accordingly, I dissent.