**UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellant,**

v.

**James Steven BRITE, Appellee.**

**No. 04–04–00164–CV.**

Court of Appeals of Texas, San Antonio.

Jan. 19, 2005.

J. Joe Harris, Bracewell & Patterson, L.L.P., Kathleen A. Devine, Raquel G. Perez, San Antonio, Lacey L. Gourley, Bracewell & Patterson, L.L.P., Austin, for appellant.

Jeff Small, Law Office of Jeff Small, Jeffrey A. Goldberg, Cynthia M. Cano, Law Office of Jeffrey A. Goldberg, San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice.

## OPINION

Opinion by ALMA L. LÓPEZ, Chief Justice.

United Services Automobile Association ("USAA") appeals the trial court's judgment awarding damages to James Steven Brite in an employment discrimination lawsuit. USAA presents eleven issues on appeal, contending: (1) the trial court did not have jurisdiction over Brite's claims; (2) the trial court erred in submitting question number one to the jury because it contained an improper instruction or a biased and inaccurate statement of law; (3) the trial court erred in refusing to include an instruction in the jury charge on USAA's affirmative defense to punitive damages; (4) the evidence is insufficient to support a finding that Brite was laid off due to age; (5) the evidence is insufficient to support the jury's finding that USAA would not have made the same decision to lay off Brite even if age had not been a motivating factor; (6) the evidence is legally and factually insufficient to support the back pay award; (7) the evidence is legally and factually insufficient to support the finding that USAA acted with malice; (8) the trial court erred in awarding front pay; (9) the evidence is insufficient to support the award of attorney's fees; (10) the trial court erred in excluding the EEOC's predetermination letter; and (11) the trial court erred in admitting evidence of bonuses and raises received by USAA executives. We affirm the trial court's judgment.

## BACKGROUND

USAA is a financial services business that provides an extensive range of insurance and financial products through its family of services. Brite worked for USAA for almost 24 years, from 1977 to 2001. He worked his way through the ranks of USAA, beginning as an adjuster trainee and eventually advancing to Investigation Manager overseeing the Central Region.

In mid–2001, USAA underwent a corporate restructuring. During the restructuring process, approximately 1400 positions were eliminated, affecting a variety of departments within USAA across the United States. Brite's department, the claims security unit ("CSU"), was affected by the restructuring. Brite was informed of his layoff on or about July 30, 2001, with the explanation that his position was being eliminated.

Prior to restructuring, the CSU was comprised of several managers, six of whom were based in San Antonio. The managers based in San Antonio were Brite, Central Region; Frank Thomson, Northeast Region; Wayne McNeely, Shared Services; B.J. Russell, Quality Assurance; Andy Diaz, Administrative and Jack Dever, Administrative. Other regional managers were: Robert Midzuno, Western Region, in Sacramento; Barry Bennet, Mountain States Region, in Colorado Springs; Norm Tupper, Mid–Atlantic, in Norfolk, Virginia; and Richard Swann, Southeast Region, in Tampa. Pete Galassi and Donna Augusyniak were branch managers, based in California and New Jersey, respectively.

When Brite was laid off, the branch manager positions were eliminated, as were the quality assurance and administrative posts. After the restructuring, only the seven positions with regional manager responsibilities remained. Brite was discharged, Thomson moved from the Northeast to Central Region, and Dever moved from the Administrative position to the

Northeast Region position. McNeely remained in Shared Services.

Brite filed a charge of age discrimination with the Equal Employment Opportunity Commission and the Texas Commission on Human Rights. The EEOC investigated Brite's charge, and sent Brite a predetermination letter informing Brite that the EEOC intended to issue a determination that there was no evidence of discrimination. Brite requested, and received, notice of right to sue from the EEOC and notice of right to file a civil action from TCHR.

Brite filed suit against USAA for employment discrimination within sixty days. USAA filed a Plea to the Jurisdiction, claiming that the amount in controversy at the time of trial would exceed the maximum jurisdictional limit of the court, and that Brite was engaging in an obvious fraudulent and bad faith maneuver to confer jurisdiction on the court. The trial court denied USAA's plea. The case was then removed to federal court, where Brite voluntarily non-suited all claims giving rise to federal jurisdiction and the case was remanded to state court. USAA filed a special exception and a second Plea to the Jurisdiction, which was denied.

Following a trial on the merits, a jury returned a verdict finding that USAA had discriminated against Brite because of his age. The jury awarded Brite $188,406.89 in back pay and $1,100,000.00 in punitive damages. The trial court granted a remittitur, reducing the punitive damages to $300,000.00. The trial court also awarded Brite $350,000.00 in front pay and $129,387.50 in attorney's fees.

## JURISDICTION

■ County Courts at Law generally have statutorily prescribed jurisdiction in civil cases where the amount "in controversy exceeds $500, but does not exceed $100,000, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs." TEX. GOV'T CODE ANN. § 25.0003(c) (Vernon 2004). The plaintiff has the burden to allege facts that affirmatively demonstrate that the trial court has jurisdiction over the suit. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). "The plaintiff's allegations in the petition of the amount in controversy control for jurisdictional purposes unless the party challenging jurisdiction pleads and proves that the plaintiff's allegations of the amount in controversy were made fraudulently for the purpose of obtaining jurisdiction." *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 n. 4 (Tex.2004).

■ Brite's original petition did not specify the amount of damages he was seeking. Rather, Brite sought "damages in a sum exceeding the minimum jurisdictional limits of the [county court]," including (i) "wage payments, vacation pay, bonuses and all other compensation due Plaintiff that accrued at the time of the filing of [the] Petition" and (ii) "a further sum representing the present value of unaccrued wage payments, vacation pay, bonuses and all other compensation due Plaintiff for the period following the date of judgment, calculated as of the date of judgment for the losses that Plaintiff has to sustain in the future." Even if damages are not specifically identified at the time a petition is filed, or if a plaintiff's damages increase beyond the court's jurisdictional limit through the passage of time, the court will continue to have jurisdiction. *Cont'l Coffee Prod. Co. v. Cazarez,* 937 S.W.2d 444, 449 (Tex.1996); *Peek v. Equip. Serv. Co.,* 779 S.W.2d 802, 804 (Tex.1989).

USAA argues, however, that the trial court never lawfully acquired jurisdiction over Brite's case because:

1. Brite's Original Petition asserted only that "the amount in controversy exceeds the minimum jurisdictional limits of this Court" without an allegation that the amount in controversy was within the trial court's maximum jurisdiction, and

2. The amount in controversy exceeded the statutorily prescribed maximum limit of the trial court at the time the lawsuit was filed.

In support of its first argument, USAA relies on *Nix v. Nix* for the proposition that the allegation that "the amount in controversy exceeds the minimum jurisdictional limits of this Court" does not confer jurisdiction on the County Court at Law, as there is no indication that the amount in controversy did not exceed the maximum limit of its jurisdiction. *See Nix v. Nix*, 797 S.W.2d 64, 65 (Tex.App.-Corpus Christi 1990, no writ). The Corpus Christi court furnished no authority for this proposition. *See id.* At least one Texas court has noted the lack of authority supporting the holding in *Nix*, and has held that an allegation of damages in excess of the minimal jurisdictional limit was sufficient to confer jurisdiction. *Sears, Roebuck & Co. v. Big Bend Motor Inn, Inc.*, 818 S.W.2d 542, 546 (Tex.App.-Fort Worth 1991, writ denied).

Furthermore, the Texas Supreme Court in *Peek v. Equip. Serv. Co.*, recognized the allegation made in Brite's pleading would be sufficient to invoke the trial court's jurisdiction by stating, "What they did not plead, however, was the amount of damages sought, **either by properly alleging that damages exceeded the minimum jurisdictional levels of the court,** *see* Tex.R. Civ. P. 47(b), or by alleging a sum certain." 779 S.W.2d 802, 803 (Tex.1989) (emphasis added). More recently, in *Bland Ind. Sch. Dist. v. Blue*, the Texas Supreme Court appears to have recognized the sufficiency of Brite's allegation by stating, "The plaintiff's allegation of damages in excess of jurisdictional limits suffices to show the amount in controversy, even if damages cannot ultimately be proved at all." 34 S.W.3d 547, 554 (Tex.2000). Accordingly, USAA's first challenge to the trial court's jurisdiction based on Brite's pleading allegation fails.

We next turn to USAA's contention that the amount in controversy exceeded the statutorily prescribed maximum limit of the trial court at the time the lawsuit was filed. In this case, Brite's pleadings would be determinative unless USAA "specifically alleged that the amount was pleaded merely as a sham for the purpose of wrongfully obtaining jurisdiction or [USAA] can readily establish that the amount in controversy is [not within the jurisdictional limitations]." *Bland*, 34 S.W.3d at 554. USAA pled that Brite was engaging in fraudulent and bad faith maneuvering in order to confer jurisdiction on the trial court. Under these circumstances, Brite's allegations continue to control unless USAA, as the party challenging jurisdiction, proves that Brite's allegations of the amount in controversy were made fraudulently for the purpose of obtaining jurisdiction. *Miranda*, 133 S.W.3d at 224 n. 4 (2004).

Because USAA challenged the existence of jurisdictional facts, we consider the evidence submitted by the parties to resolve the jurisdictional issue. *Id.* at 227. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.* at 227–28. The trial court may rule on the jurisdictional issue as a matter of law only if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue. *Id.* "Because a plaintiff is not required to

prove his damages in order to support jurisdiction, the issue is not whether there is a fact question as to the actual amount of his damages; the issue is whether there is a fact question as to whether the actual amount of his damages is within the court's jurisdictional limit." *Retzlaff v. Deshay*, No. 14–03–00833–CV, 2004 WL 2163173, at *2 (Tex.App.-Houston [14th Dist.] Sept. 28, 2004, no pet.).

In this case, the evidence was disputed. USAA sought to support its contention regarding the front pay and back pay damage amounts with the affidavit of Bruce A. Tingle, the Director of Compensation for USAA. Brite refuted Tingle's back pay calculation by arguing that Tingle's affidavit supported Brite's contention that at the time the original petition was filed, the back pay amount only totaled approximately $85,000.00, and the trial court did not lose jurisdiction because the amount of the back pay increased due to the passage of time. *Cazarez*, 937 S.W.2d at 449.

■■■ To recover front pay, a plaintiff must show that reinstatement is not feasible as a remedy. *Wal–Mart Stores, Inc. v. Davis*, 979 S.W.2d 30, 45 (Tex.App.-Austin 1998, pet. denied). The court must determine whether front pay is allowed; the jury determines the amount. *Id.* Numerous factors affect whether any front pay will be awarded and, if awarded, the amount of the front pay award. *See Cox & Smith, Inc. v. Cook*, 974 S.W.2d 217, 227–28 (Tex. App.-San Antonio 1998, pet. denied) (awarding front pay after determining reinstatement was feasible, plaintiff

mitigated damages, and negative effect of termination would last five years); *City of Austin v. Gifford*, 824 S.W.2d 735, 743 (Tex.App.-Austin 1992, no pet.) (awarding an amount of front pay to be paid each week subject to reinstatement for a maximum of five years). The effect of these various factors is apparent in both the amount of front pay awarded by the trial court and USAA's challenge to the sufficiency of the evidence to support the award on appeal. The trial court reduced both the number of years for which it awarded front pay and the amount of the front pay awarded each year from the amount requested. In addition, USAA argues on appeal that no front pay should have been awarded because Brite failed to mitigate his damages. Finally, the trial court was required to factor in evidence that USAA had offered Brite another position within days of his termination.

Under the unique posture of this case, with the evidence disputed regarding whether front pay should even be awarded, we hold that the original petition invoked the trial court's jurisdiction. The fact that the trial court later determined that reinstatement was not feasible and awarded an amount of front pay that exceeded the jurisdictional limits does not defeat the jurisdiction invoked in Brite's original petition. At the time the original petition was filed, there was a fact question as to whether the actual amount of Brite's damages was within the jurisdictional limit.[1] *Retzlaff*, 2004 WL 2163173,

---

1. The dissenting opinion asserts that Brite "pleaded himself out of court" by the prayer for relief in his Second Amended Petition which stated that "[t]he maximum amount claimed for all damages listed above is $1.6 million." The dissenting opinion contends that the speculative nature of the front pay damages does not affect the jurisdictional issue because "the question is not what a plain-

tiff will recover or is likely to recover, it is what the plaintiff seeks to recover." However, as previously stated, the issue for jurisdictional purposes "is whether there is a fact question as to whether the actual amount of [Brite's] damages is within the court's jurisdictional limits." *Rezlaff*, 2004 WL 2163173, at *2. The speculative nature of the front pay damages in view of all of the factors that must

at *2. Accordingly, USAA failed to prove that the amount Brite pled was merely a sham for the purpose of wrongfully obtaining jurisdiction, and USAA could not readily establish that the amount in controversy was not within the jurisdictional limits. *See Bland,* 34 S.W.3d at 554.

### SUFFICIENCY OF EVIDENCE

In conducting a legal sufficiency review, we must view the evidence in a light to support the disputed finding and disregard evidence and inferences to the contrary. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001). If more than a scintilla of evidence supports the challenged finding, the no-evidence challenge must fail. *Gen. Motors Corp. v. Sanchez,* 997 S.W.2d 584, 588 (Tex.1999). More than a scintilla of evidence exists when the evidence supporting the finding as a whole rises to a level that would allow reasonable and fair-minded individuals to differ in their conclusions. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997).

When conducting a factual sufficiency review, we consider and weigh all the evidence and set aside a verdict only if the jury's finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). We cannot reverse merely because we conclude that a preponderance of the evidence supports the opposing answer, nor can we substitute our opinion for that of the trier of fact and determine that we would have reached a different conclusion. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988). The fact finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony and resolves any inconsistencies in the testimony.

*McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986).

### *Whether Age Was a Motivating Factor and Award of Attorneys Fees*

USAA argues that there is no evidence supporting the jury's finding that age was a motivating factor in USAA's decision to lay off Brite, and that because of this, the award of attorneys fees to Brite was erroneous. The jury was presented with undisputed evidence that Brite, age 52, had been working at USAA for twenty-four years when he was terminated. USAA argues that Thomson, who assumed the Central Region manager position, was older than Brite and that Brite's supervisors did not know the ages of employees when they made layoff decisions. Conflicting evidence, however, was presented that Brite had been informed the reason he was terminated was the elimination of his position. The jury was presented with evidence that Dever, the employee who assumed Thomson's position upon Brite's termination, was seven years younger than Brite. Brite presented evidence that Dever possessed far less investigative experience and very little employment management experience. The jury also had before it evidence that the youngest managers in the unit, who had only recently been promoted to their managerial posts, were retained. Further, the jury heard evidence that Kevin Casey, who participated in deciding which managers to layoff, identified two managers approximately nine years younger than Brite as a "new manager" and a "new manager ... key player for the future."

This evidence, taken as a whole, could easily allow fair-minded people to reach differing conclusions. Therefore, the

be taken into consideration in determining whether to award front pay raises a fact question as to whether Brite's damages were with-

in the court's jurisdictional limits. As a result, the trial court did not err in resolving the jurisdictional issue.

jury's apparent conclusion that Brite was replaced by a younger person and/or that younger persons were treated more favorably and that the reason provided by USAA for terminating Brite was both false and discriminatory is supported by legally sufficient evidence. Because the jury's conclusion is supported by the evidence, USAA's argument that Brite should not have been awarded attorney's fees also fails.

### Award of Back Pay and Punitive Damages

USAA also argues that there is no evidence supporting the jury's award of back pay or punitive damages. USAA challenges the award of back pay to Brite on a theory that Brite failed to mitigate his damages. USAA argues that Brite cannot recover back pay after February 2002, because he abandoned efforts to find comparable employment. Brite testified that after having no success finding satisfactory, comparable employment, he devoted full-time days to researching and trading stocks to generate income. Not making money in the stock market is not a sign of lack of effort. Professional money managers were also losing money in the market conditions that existed in the time period between Brite's dismissal and the trial. Brite's testimony, which was apparently accepted by the jury, shows an attempt to mitigate; therefore, the award of back pay is not defeated by USAA's argument of lack of mitigation.

USAA argues that the jury's award of punitive damages is in error because the evidence does not support a finding that USAA discriminated against Brite "with malice or with reckless indifference." The jury was instructed that "malice" means "a specific intent by USAA to cause substantial injury" or "an act or omission by USAA … of which USAA had actual, subjective awareness of the risk involved,

but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." Alternatively, USAA argues that the award of punitive damages is excessive.

Brite was nearing the age of retirement. He had worked for USAA for twenty-four years. USAA was aware of these facts. USAA was also aware that by laying off people before they reached the age of retirement eligibility at 55, it would save considerable costs in the areas of medical and other ongoing retiree benefits. USAA presented evidence concerning the restructuring process and the concern USAA had for its employees. However, the jury also heard evidence from executives that they were unaware of their own salaries or the amounts of their bonuses. This could certainly have called the veracity of the testimony into question. Additionally, the jury learned that within days of his termination, USAA offered Brite another lesser position—which it could have transferred Brite into immediately, but chose not to, further supporting the theory that USAA could save on the costs associated with higher paid, long-term employees and retirees.

Given the less than forthcoming answers concerning salary bonus numbers, and USAA's reasoning for terminating Brite, the jury was within its power to question the veracity of USAA's evidence, and to conclude that USAA acted with malice.

### Award of Front Pay

USAA asserts that the trial court's award of front pay is erroneous because there is no evidence that Brite was discriminated against on the basis of age, and because Brite failed to mitigate his damages.

The evidence shows that at the time of his dismissal, Brite was 52 and intended to work at USAA until he turned 65. Brite

had been employed at USAA for twenty-four years at the time of his termination. His performance evaluations were above average and he had earned significant recognition for his work.

The court awarded front pay for 7 years, to age 62, rather than to age 65. Additionally, while the court agreed that Brite's former salary was $95,824.56, it awarded only $50,000 per year in front pay. The court reduced the value of Brite's salary and benefit package to reflect what Brite should be expected to earn in San Antonio under current market conditions, with the $50,000 per year award designed to make up the difference.

■ The purpose of front pay as an equitable remedy is to make a person whole who has suffered employment discrimination, and when reinstatement is not a feasible option. *Hansard v. Pepsi–Cola Metropolitan Bottling Co., Inc.,* 865 F.2d 1461, 1469 (1989); *Wal–Mart Stores, Inc. v. Davis,* 979 S.W.2d 30, 45 (Tex.App.-Austin 1988, pet. denied). Based on the considerations listed in its order, the trial court's award of front pay is supported by legally and factually sufficient evidence and we so hold.

### Whether USAA Would Have Made the Same Decision

By answering "No" to Question No. 2 of the jury charge, the jury rejected USAA's affirmative defense that it would have selected Brite for layoff even if age had not been a motivating factor. USAA contends that the jury's finding is unsupported and contrary to the evidence. Question No. 2 queried, "Would USAA have laid off James Steven Brite even if age had not been a motivating factor?"

For a party to successfully attack the sufficiency of an adverse finding on an issue on which it has the burden of proof, the party must demonstrate that the evidence establishes all vital facts in support of its contentions as a matter of law. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001); *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). In determining whether a proposition contrary to the verdict has been established as a matter of law, we examine the record first for evidence that supports the jury's finding, while ignoring all evidence and inferences to the contrary. *Sterner,* 767 S.W.2d at 690. Only if there is no evidence to support the finding, will we examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* We will sustain the issue only if the contrary proposition is conclusively established. *Dow,* 46 S.W.3d at 241. There is also authority, however, that a jury's failure to find a given fact does not need to be supported by legally sufficient evidence because the jury may believe or disbelieve any witness it chooses, including witnesses presented by the party having the burden of proof. *Templeton v. Dreiss,* 961 S.W.2d 645, 669 (Tex.App.-San Antonio 1998, pet. denied); Wendell Hall, *Standards of Review in Texas,* 34 St. Mary's L.J. 1, 165–66 (2002).

■ Testimony, such as that concerning Brite's many commendations, his many years of experience, and his above average evaluations, coupled with testimony of the retention of younger, less experienced managers provides some evidence to support the jury's conclusion that USAA would not have dismissed Brite without age as a motivating factor. Therefore, there is no reason to examine the record to determine if the contrary proposition is established as a matter of law.

However, even if there were no evidence to support the jury's finding, the record does not conclusively establish that USAA would have dismissed Brite despite his

age. USAA offers the explanation that Dever, who USAA contends did not replace Brite, was retained because of his financial skills. This, however, does not conclusively establish as a matter of law that Brite would have been laid off despite his age.

### JURY INSTRUCTIONS

#### Question No. 1 [2]

■ USAA contends that the trial court erred in submitting Question No. 1 to the jury because it improperly instructed the jury on the liability issue and it contained a biased and inaccurate statement of the law and therefore failed to fairly present the disputed issue for the jury's determination. An incorrect jury instruction is grounds for reversal only if it probably caused the rendition of an improper judgment. *Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex.2001). To determine whether the instruction probably caused an improper judgment, we examine the entire record. *Id.*

Reading the entire charge—in the context of the live pleadings and the evidence presented—the jury could not have found that USAA unlawfully terminated Brite without concluding that "in addition" to proving the elements of a prima facie case of discrimination, the jury believed that "USAA's explanation for terminating Mr. Brite [was] false." The instruction does not appear to have caused an improper judgment.

■ The Texas Rules of Civil Procedure require that the trial court submit instructions and definitions "as shall be proper to enable the jury to render a verdict." TEX.R. CIV. P. 277 (Vernon 2004). A proper instruction assists the jury, accurately states the law, and finds support in the pleadings and evidence. *Wal–Mart Stores, Inc. v. Middleton*, 982 S.W.2d 468, 470 (Tex.App.-San Antonio 1998, pet. denied). The trial court has great discretion in submitting the jury charge, so long as the charge properly submits the disputed issues that control the disposition of the case. *Villegas v. Tex. Dep't of Transp.*, 120 S.W.3d 26, 37–38 (Tex.App.-San Antonio 2003, pet. denied); *see also* TEX.R. CIV. P. 277 (Vernon 2004). The ultimate question in this case was whether USAA unlawfully terminated Brite because of his age. Argument of counsel asked that question, the testimonial and documentary evidence presented asked that question, and the charge reflected the same question.

2. Question 1 of the charge read:
   Was age a motivating factor in USAA's decision to discharge Steven Brite?
   A "motivating factor" in an employment decision is a reason for making the decision at the time it was made. There may be more than one motivating factor for an employment decision.
   Mr. Brite may prove age was a motivating factor for his discharge by showing:
   1) that he was within the protected group;
   2) he was discharged;
   3) he was qualified to assume a position at the time of discharge; and
   4) he was replaced by someone outside the protected class; someone younger replaced him or was treated more favorably; or he was otherwise discharged because of his age.
   In addition to the foregoing, if you determine USAA's explanation for terminating Mr. Brite is false, you may, but are not required to, conclude that USAA unlawfully terminated him because of age.
   An employer commits an unlawful employment practice, if because of age the employer discharges an individual or discriminates in any other manner against the individual. Discrimination because of age or on the basis of age applies to discrimination against an individual 40 years of age or older. This is a protected group.
   Answer "Yes" or "No."

■ USAA further argues that asking the jury to find the facts as they pertain to proving a prima facie case of age discrimination equates to instructing the jury on the shifting burdens of production and proof embodied in the *McDonnell Douglas* framework. The *McDonnell Douglas* framework simplifies the basic allocation of burdens in a case alleging discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). There is no mention in the court's charge, however, of *McDonnell Douglas*, the shifting burdens of production and proof, or any of the legalistic terminology associated with the framework. The charge assisted the jury in finding the facts pertaining to a prima facie case of age discrimination, it accurately stated the law, and it found support in the pleadings and the evidence.

### Affirmative Defense Instruction

In *Kolstead v. Am. Dental Ass'n*, the United States Supreme Court established an affirmative defense to punitive damages in employment discrimination cases, stating that "in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where the decisions are contrary to the employer's good faith efforts to comply with Title VII." 527 U.S. 526, 528, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). USAA argues that the trial court erred in refusing to include an instruction on USAA's affirmative defense to punitive damages.

■ A proper instruction assists the jury, accurately states the law, and finds support in the pleadings and evidence. *Wal–Mart Stores, Inc. v. Middleton*, 982 S.W.2d 468, 470 (Tex.App.-San Antonio 1998, pet. denied). While USAA did plead the affirmative defense, the trial court determined that the evidence adduced at trial

did not support an instruction on the affirmative defense. The trial court indicated that one constant and underlying theme permeating the evidence was that everyone was "just following orders." Considerable testimony was presented that the decision for termination ultimately rested with Breslin and Casey. USAA argued that instructions were given by human resources personnel that the terminations be fair and non-discriminatory. However, those responsible for terminating Brite were acting within the scope and course of their employment. The trial court determined that there was no plausible way to take their conduct outside the scope of their job duties.

■ To constitute a reversible charge error, the trial court must have abused its discretion. *See Tex. Dep't of Human Serv. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles, or in other words, acted in an arbitrary and unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). The trial court did not abuse its discretion in refusing to include an instruction on the affirmative defense. The trial court found that evidence was not presented to support the inclusion of the instruction. The charge to the jury should include questions, instructions, and definitions raised by the pleadings and evidence. Tex.R. Civ. P. 278; *see also Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 718 (Tex.1995) (indicating that "[i]f an issue is properly pleaded and is supported by some evidence, a litigant is entitled to have controlling questions submitted to the jury"). If the evidence adduced at trial is not sufficient to raise a particular instruction, it is not an abuse of discretion for the trial court to exclude that instruction.

## EVIDENTIARY RULINGS

Questions concerning the admission and exclusion of evidence are determined by the trial court, whose ruling will not be overturned on appeal absent an abuse of discretion; therefore, we review USAA's tenth and eleventh issues under an abuse of discretion standard. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995). A determination of whether an abuse of discretion occurred is not whether the facts present an appropriate case for the trial court's action; rather, the test is whether the trial court acted without reference to any guiding rules and principles, or in other words, acted in an arbitrary and unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

■ In its tenth issue, USAA contends the trial court erred in excluding the predetermination letter to Brite from the EEOC, informing Brite that the EEOC intended to issue a determination that there was no evidence of discrimination. USAA argues that the trial court's determination that the prejudicial nature of the predetermination letter outweighed its probative value was an abuse of discretion.

The trial court noted that the proffered document was an interim determination—not a final report from the EEOC. The trial court had before it cases which addressed the admissibility of a final EEOC determination—but not a predetermination letter. Therefore, the court properly exercised its discretion in concluding the probative value of the predetermination letter, because of its very nature of not being a final determination, was substantially outweighed by its prejudicial nature.

■ In its eleventh issue, USAA complains of the admission of evidence concerning the bonuses and raises of USAA executives from the time of restructuring to the time of trial. USAA objected to the admission of this evidence on the grounds that the evidence was irrelevant, confidential, and inflammatory. Over objections, the trial court admitted the evidence.

USAA argues that evidence regarding raises and bonuses received by USAA employees is not probative of Brite's age discrimination claim, and is, therefore, irrelevant. USAA contends that evidence of employees receiving raises and bonuses does not have a tendency to make Brite's claim that he was selected for layoff due to his age any more or less probable than it would be without the evidence. USAA asserts that evidence of employee raises and bonuses is irrelevant and prejudicial.

■ "Relevant evidence" is that evidence which has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without evidence. TEX.R. EVID. 401. The test for relevancy is satisfied if there is directly, or by inference, some logical conclusion between the fact offered and the fact to be proven. *Boswell v. Brazos Elec. Power Co-op.*, 910 S.W.2d 593, 601 n. 3 (Tex.App.Ft. Worth 1995). In this case, the trial court determined that evidence concerning how much pay had increased since 2001 and evidence concerning lower pay of younger persons was relevant. The trial court did not act in an arbitrary and capricious manner, and did not abuse its discretion.

## CONCLUSION

The judgment of the trial court is affirmed.

Dissenting opinion by SARAH B. DUNCAN, Justice.

SARAH B. DUNCAN, Justice, dissenting.

I respectfully dissent. Brite "pleaded himself out of court"[1] when he filed a petition stating that the maximum amount of damages he claimed was $1.6 million. Accordingly, I would reverse the trial court's judgment and dismiss the cause. Brite would then have sixty days in which to refile his suit in the district court.

## SCOPE AND STANDARD OF REVIEW

Whether a court has subject matter jurisdiction and whether a pleading alleges facts that affirmatively demonstrate a trial court's subject matter jurisdiction are questions of law that we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004). In making this determination, "[t]he plaintiff's allegations in the petition of the amount in controversy control for jurisdictional purposes unless the party challenging jurisdiction pleads and proves that the plaintiff's allegations of the amount in controversy were made fraudulently for the purpose of obtaining jurisdiction." *Id.* at 224 n. 4.

## PROCEDURAL BACKGROUND

On May 2, 2002 Brite filed his Original Petition in the county court at law, which has limited jurisdiction in civil cases when the amount "in controversy exceeds $500, but does not exceed $100,000, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs."[2] Brite's Original Petition states "the amount in controversy exceeds the minimum jurisdictional limits of this Court" but fails to include the statement that has been required by Texas Rule of Civil Procedure 47(b) since September 1, 1990: "the damages sought are *within* the jurisdictional limits of the court." TEX.R. CIV. P. 47(b) (emphasis added).[3] But Brite's Original Petition does state that he seeks exemplary damages, statutorily capped at $300,000[4] and the types of actual damages he claims: "lost income and benefits" in the past and, "[i]n all reasonable probability," "into the future, if not for the balance of [his] natural life .... "

In response to Brite's original petition, USAA filed an answer and, on June 20, 2002, removed the case to federal court. Ultimately, Brite amended his petition to delete the claims giving rise to federal jurisdiction; and the federal district court, on March 31, 2003, remanded the case to state court. Soon thereafter, on July 7, 2003, USAA filed its first Plea to the Jurisdiction, which explained how "the amount in controversy" "exceed[ed] $100,000, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs":

> At the time of his separation of employment from USAA (on or about September 30, 2001), [Brite's] annualized salary was $73,999.90. .... [Brite] also received a 2001 performance bonus in the amount of $11,304.61.... In addition, as an employee of USAA, [Brite] was entitled to additional benefits including medical insurance, participation in a 401(k) plan, and participation in USAA's retirement plan.

1. *Peek v. Equip. Serv.* Co., 779 S.W.2d 802, 804 (Tex.1989).

2. TEX. GOV'T CODE ANN. § 25.0003(c) (Vernon 2004).

3. *See Sears, Roebuck & Co. v. Big Bend Motor Inn, Inc.*, 818 S.W.2d 542, 546 n. 5 (Tex.App.- Fort Worth 1991, writ denied) (noting that Rule 47 was amended to add subsection b effective September 1, 1990).

4. TEX. LAB.CODE ANN. § 21.2585(d)(4) (Vernon Supp.2004).

[Brite's] back pay **alone,** as claimed in sections (a) and (b) of [Brite's] Petition, will exceed $148,000 by the time of trial (currently scheduled for September 22, 2003). [Brite's] alleged front pay damages (*i.e.,* unaccrued wage payments, vacation pay, and all other compensation due to [Brite] for the period following the date of judgment through "the balance of [Brite's] natural life") amount to hundreds of thousands of dollars. Specifically, [Brite] was born on August 3, 1948, thus at [the] time of trial he will be 55 years of age. .... Accordingly, if [Brite's] "natural life" extends to age 70, [Brite] is effectively seeking 15 years of front pay, amounting to **over a million dollars.**

USAA concluded its plea with the statement that "[Brite's] vague and ambiguous claim of jurisdiction in his Petition is an obvious fraudulent and bad faith maneuver to attempt to confer jurisdiction upon this Court. Accordingly, [Brite's] action should be dismissed entirely for want of jurisdiction."

At the ensuing hearing on August 8, USAA's attorney explained that Brite's request for future lost wages and benefits "is actually not something that accrues because of the passage of time. .... And the amount in controversy is—means the full amount which could be recovered under the allegations and pleadings ...." Moments later, the following exchange occurred between the trial judge and Brite's attorney:

THE COURT: Mr. Goldberg, I know you to be a very careful lawyer.

MR. GOLDBERG: Absolutely, Your Honor.

THE COURT: Why is this one here rather than in district?

MR. GOLDBERG: We haven't alleged an amount in controversy. There are no numbers associated with this. We had no idea whether Mr. Brite would get a job or not.

We filed pursuant to the pleading requirements, 47(b). We alleged the court's proper jurisdiction in the case. They have not specially excepted to get a maximum amount claimed. That's not my fault. That's their fault. And the court properly obtained jurisdiction when we filed the case.

THE COURT: Out of an abundance of caution, would it in some way hurt your client's case to remove this to district court at this time and to refile in district or are we outside the statute at this point?

MR. GOLDBERG: Yes, sir, absolutely. At the time we filed there were many uncertainties about what—

THE COURT: So you had to be within that 60–day window from the [Equal Employment Opportunity Commission] letter?

MR. GOLDBERG: Yes. Well, from the [Texas Commission on Human Rights], Your Honor, correct. And after we filed this case, the Defendants removed the case to Federal Court and we spent almost a year up there in the Federal Court when the Federal Judge, Ed Prado, remanded the case and in his Order noted how the Defendants appeared to be trying to avoid State Court altogether.

I mean, they made a lot [of] to do about forum manipulation claiming that we were trying to manipulate the forum. The Federal Judge saw right through that and remanded this case.

But in terms of the allegations, the Texas Supreme Court said the lack of a specific dollar averment does not deprive this court of jurisdiction. There is no dollar averment in our

petition pure and simple. So when we filed this case, it was properly filed. We did not—

THE COURT: I think the risk you run is that I may well retain jurisdiction but I may lose any jurisdiction to award damages over and above the $100,000 if, in fact, those damages existed at—if those damages could have been alleged to exist at the time of the filing. You know, you may find yourself capped. I can't promise you that you won't.

MR. GOLDBERG: Well, I have addressed the same situation before in a case that I tried where the plaintiff worked for a company for about five years. He was fired. He found another job. And the jury determined that his front pay would have been $320,000, and it was because at the time of trial he would have had a better paying position had he not been terminated. The trial court signed the order. It was a judgment filed with the court. And the fact that his front pay might ultimately exceed $100,000 does not deprive the court of jurisdiction.

In response, USAA's attorney pointed out that, at the time Brite filed his original petition in May 2002, "[t]he last time he looked for a job was three months before in February of 2002. So they knew he didn't have a job and wasn't looking for a job." Indeed, said USAA's attorney, when Brite's deposition was taken in November or December of 2002, "he still hadn't looked for a job. He admitted that the last time he looked for a job was in February of 2002." At the conclusion of the hearing, the judge denied the plea with the following statement:

Well, I am loath[ ] to deny somebody a forum, and to rule that I don't have jurisdiction here would, in fact, deny

[Brite] the forum. And it is a little difficult to put a dollar amount on what it is that [Brite] [has] pled for, but I think it could conceivably be shoehorned to fit in under the $100,000 limit which would give me jurisdiction. So I am going to respectfully overrule the Plea to the Jurisdiction at this time and proceed and you, of course, proceed at your own risk that you may have $100,000 cap if indeed you are successful.

A written order was signed August 14, 2003. A few days later, on August 18, 2003, USAA filed a single special exception:

Pursuant to Rule 47 of the Texas Rules of Civil Procedure, [USAA] specially excepts to Paragraph IX and to the Prayer for relief of [Brite's] Original Petition (attached as Tab 1) because [Brite] fails to state the maximum amount of damages sought against [USAA] in this action. [USAA] also specially excepts to Paragraph VIII and to the Prayer for relief of [Brite's] First Amended Complaint (attached at Tab 2) because [Brite] fails to state the maximum amount of damages sought against [USAA] in this action. [USAA] has a right to know the amount of monetary damages that [Brite] seeks in this action. [Brite] should be required to replead and state the maximum amount of damages sought.

Our record does not contain an order on USAA's special exception; but it does contain a fiat setting USAA's special exception for hearing on August 22, 2003. On the day of the hearing, Brite filed his Second Amended Petition which, insofar as damages are concerned, is identical to Brite's original petition except for the last sentence in the prayer, which states that "[t]he maximum amount claimed for all damages listed above is $1.6 million." USAA's September 10 answer to this peti-

tion thus avers that the "amount of damages [Brite] is seeking exceeds the jurisdictional maximum of the county court ($100,000) and, thus, the Court does not have subject matter jurisdiction over this case."

On September 15, USAA filed its Second Plea to the Jurisdiction, "because [Brite's] representations and other evidence establish that the Court did not have jurisdiction over this case at the time it was filed." In support of this plea, USAA attached documentary proof establishing that, at the time Brite filed his Original Petition, the value of his lost past wages and benefits totaled approximately $136,841.52, while Brite's own August 22 second supplemental answers to USAA's request for disclosures establish that "his lost wages and benefits in the future, until age 65, total approximately $1,000,000." USAA continued to maintain that Brite's attempts to confer jurisdiction on the county court were in bad faith, as evidenced by his previous discovery responses in which he "consistently failed to provide information regarding the amount and method of calculating his damages, despite being specifically requested to do so by USAA."

At the ensuing September 19 hearing, USAA's attorney tried to allay the trial judge's concern that Brite would be "denied a forum" by explaining that Brite would have sixty days from the date of dismissal to refile in the district court.[5]

Throughout the hearing, Brite's attorney insisted that, because he did not state the maximum amount of damages claimed in his original petition, the trial court acquired jurisdiction when the petition was filed; and, once the court "acquired jurisdiction, it's not going to lose jurisdiction by the passage of time." In support of his position, he repeatedly cited *Continental Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444 (Tex.1996). The trial judge denied the plea later that day in a letter that states as follows:

> I have once again reviewed the Original Petition, the transcript of the prior hearing and the cited case law in attempting to determine the Defendant's 2nd Plea to the Jurisdiction. It appears that at the time of filing (May 22, 2002)[sic] the Plaintiffs [sic] claims did not exceed the Court's jurisdiction. The defendant's plea is therefore denied.

### APPLICABLE LAW

"The failure of a plaintiff to state a jurisdictional amount in controversy in its petition, without more, ... will not deprive the trial court of jurisdiction." *Peek v. Equip. Serv. Co.,* 779 S.W.2d 802, 804 (Tex. 1989). However, this "liberal construction of the pleadings in favor of jurisdiction is appropriate" only so long as "the plaintiff's original and *amended* petitions do not affirmatively demonstrate an absence of jurisdiction." [6] *Continental Coffee Prods.*

---

5. USAA's attorney cited section 16.064 of the Texas Civil Practice and Remedies Code, which provides that "[t]he period between the date of filing an action in a trial court and the date of a second filing of the same action in a different court suspends the running of the applicable statute of limitations for the period if" the action is dismissed "because a lack of jurisdiction in the trial court where the action was first filed" and the action is refiled "in a court of proper jurisdiction" "not later than the 60th day after the date of dismissal." Tex.

CIV. PRAC. & REM.CODE ANN. § 16.064 (Vernon 1997).

6. The majority states that "in *Bland Ind. Sch. Dist. v. Blue,* the Texas Supreme Court appears to have recognized the sufficiency of Brite's allegation by stating, 'The plaintiff's allegation of damages in excess of jurisdictional limits suffices to show the amount in controversy, even if damages cannot ultimately be proved at all.'" However, this statement in Bland was made in the context of a discussion regarding a situation in which "a

*Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996) (emphasis added); *see also Peek*, 779 S.W.2d at 804 ("Even if the jurisdictional amount is never established by pleading, . . . a plaintiff may recover *if* jurisdiction is proved at trial.") (emphasis added). If an amended pleading "affirmatively demonstrate[s] an absence of jurisdiction" by alleging damages in excess of the court's maximum jurisdictional limit, it must first be determined whether the "plaintiff's original petition [was] properly brought in [the] particular court" and second whether "the additional damages accrued because of the passage of time." *Continental Coffee Prods. Co.*, 937 S.W.2d at 449. If the answer to both questions is "yes," the trial court retains jurisdiction. *Id.* But if not, the trial court's jurisdiction is defeated; and "its judgment must be reversed and the case dismissed." *Allright, Inc. v. Guy*, 590 S.W.2d 734, 735 (Tex.Civ.App.-Houston [14th Dist.] 1979, writ ref'd n.r.e.).

In *Allright*, Talmage M. Guy's automobile was stolen from an Allright, Inc. parking lot; he thereafter filed suit under the Texas Deceptive Trade Practices Consumer Protection Act in the county court at law, which at the time had a maximum jurisdictional limit of $5000, exclusive of interest. *See id.* (citing Tex.Rev.Civ. Stat. Ann. art.1970a (Vernon Supp.1978–79)).[7] Although Guy alleged that his actual damages were $1807.51, the then-applicable version of the DTPA made an award of treble damages to a prevailing consumer mandatory. *Id.* Consequently, Guy actually sought $5422.53. *Id.* Allright filed a plea to the jurisdiction; but the trial court overruled Allright's plea and rendered judgment in Guy's favor for an amount in excess of $5000, exclusive of interest. *Id.* On appeal, Allright argued "that the county court at law had no jurisdiction to hear the case because [Guy's]'s original petition asserted an amount of actual damages, $1,807.51, which when tripled exceeds the $5,000.00 maximum statutory jurisdiction of the court." *Id.* The Fourteenth Court of Appeals agreed and therefore reversed the trial court's judgment and dismissed

---

defendant asserts that the amount in controversy is *below* the court's [*minimum* ] jurisdictional limit. . . ." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000) (emphasis added). When the statement is read in context, it clearly has no application to the situation presented here-a defendant asserting that the amount in controversy is *above* the court's *maximum* jurisdictional limit. Further, the court qualified the statement quoted by the majority by stating that "[t]he plaintiff's pleadings are determinative *unless* the defendant specifically alleges that the amount was pleaded merely as a sham for the purpose of wrongfully obtaining jurisdiction, or the defendant can readily establish that the amount in controversy is insufficient." *Id.* (emphasis added). The majority also appears to find support for its holding in *Sears, Roebuck & Co. v. Big Bend Motor Inn, Inc.*, 818 S.W.2d 542 (Tex.App.-Fort Worth 1991, writ denied). However, the Fort Worth Court of Appeals properly recognized that a defendant who fails to object to a defect in pleading jurisdiction "waives the right to complain of such defect *if* the plaintiff establishes jurisdiction at trial before resting its case" and thus went on to determine that the testimony at trial established that the amount in controversy was within the county court at law's $50,000 maximum jurisdictional limit. *Id.* at 546 (emphasis added).

7. At the time, article 1970a provided as follows:

All county courts at law, county civil courts, and other statutory courts exercising civil jurisdiction corresponding to the constitutional jurisdiction of the county court in civil cases shall have jurisdiction concurrent with that of the district court when the matter in controversy shall exceed in value Five Hundred Dollars ($500) and shall not exceed Five Thousand Dollars ($5,000) exclusive of interest.

Act of May 31, 1971, 2nd Leg., R.S., ch 915, § 1, 1971 Tex. Gen. Laws 2814 (current version at Tex. Gov't Code Ann. § 25.003(c) (Vernon 2004)).

the cause. *Id.*[8] So it is here.

## DISCUSSION

As set forth above, Brite's Original Petition states "the amount in controversy exceeds the minimum jurisdictional limits of this Court" but fails to include the statement that has been required by Rule 47(b) since September 1, 1990: "the damages sought are *within* the jurisdictional limits of the court." Tex.R. Civ. P. 47(b) (emphasis added). Nevertheless, Brite's Original Petition does "not affirmatively demonstrate an absence of jurisdiction" and, as a result, must be given "a liberal construction ... in favor of jurisdiction." *Continental Coffee Prods. Co.,* 937 S.W.2d at 449. But the same cannot be said for Brite's Second Amended Petition, which "affirmatively demonstrate[s] an absence of jurisdiction" by stating that Brite was seeking a maximum of $1.6 million for his actual and exemplary damages, attorney's fees, and costs. Accordingly, we must determine whether Brite's "original petition [was] properly brought in [the] particular court" and whether "additional damages accrued because of the passage of time." *Id.* Brite has not and cannot show either.

Brite's exemplary damages are statutorily capped at $300,000.[9] Therefore, it was clear at the time he filed his Second Amended Petition that he sought actual damages, attorney's fees, and costs of at least $1.3 million ($1,600,000–$300,000 = $1,300,000). And, although it is impossible to determine the precise amount of attorney's fees, interest, and costs that Brite sought, it is possible to state unequivocally that this sum was less that $1.2 million ($1,300,000 [actual damages]-$100,000 [trial court's maximum jurisdictional limit] =

$1,200,000). Accordingly, the face of Brite's Second Amended Petition conclusively establishes that, at least by the time this petition was filed, he sought to recover actual damages far in excess of the trial court's $100,000 maximum jurisdictional limit. And a comparison of this petition with Brite's Original Petition makes clear that the amount of actual damages claimed in Brite's Second Amended Petition was approximately the same amount as that sought in his Original Petition.

As noted above, Brite's Second Amended Petition seeks exactly the same types of actual damages claimed in his Original Petition—lost past wages and benefits and lost future wages and benefits. While it is true that his claim for past lost wages and benefits increased due solely to the passage of time, his claim for future lost wages and benefits actually decreased due to the passage of time. This is necessarily true because, with each month that passed, Brite was one month closer to retirement and therefore entitled to one month less of lost future wages and benefits. From this, two conclusions are inescapable: Brite's claimed damages did not increase due solely to the passage of time and, as a result, the trial court never "lawfully and properly" acquired jurisdiction over the case. Arguing to the contrary, Brite relies upon *Weidner v. Sanchez,* 14 S.W.3d 353 (Tex. App.-Houston [14th Dist.] 2000, no pet.). But this attempted analogy fails.

In *Weidner,* the plaintiff initially pleaded that her damages were $95,000 and thus within the county court at law's jurisdiction. *Id.* at 359. She amended her petition and increased her claimed damages to $210,000 but only after her board-certified orthopedic surgeon testified on deposition that time had proven her injuries were not

---

8. The holding in *Allright* was agreed with and approved by this court in *Long v. Fox,* 625 S.W.2d 376, 379 (Tex.App.-San Antonio 1981, writ ref'd n.r.e.).

9. Tex. Lab.Code Ann. § 21.2585(d)(4).

temporary, as he had believed, but permanent. *Id.* at 359–60. The Fourteenth Court of Appeals rejected the defendant's jurisdictional challenge, stating that "the record does not affirmatively establish that [the plaintiff] and her trial attorney knew or should have known her injuries were permanent at the time she filed her original petition." *Id.* at 361. The *Weidner* plaintiff thus filed an original petition claiming a specific amount of damages within the county court at law's jurisdictional limits—"thereby lawfully and properly" invoking the county court at law's jurisdiction—and later amended her petition to increase the amount of claimed damages beyond the county court at law's jurisdictional limit because the passage of time had proved the injuries she thought were temporary were in fact permanent. Here, on the other hand, Brite failed to file an original petition claiming a specific amount of damages within the county court at law's jurisdictional limits; and his Second Amended Petition seeks not newly-discovered or additional damages but exactly the same types of actual damages claimed in his Original Petition.

Brite next argues that, "at the time of filing, the calculation of the dollar amount for [his lost future wages and benefits] would have been speculative at best, even if it could be assumed that [lost future wages and benefits] would become necessary" and, similarly, he "could not have known at the time of filing whether he would find new employment" or "comparable employment." But these arguments evidence not only a misunderstanding of the law but a mischaracterization of the undisputed facts. For purposes of determining the "amount in controversy," the question is not what a plaintiff will recover or is likely to recover; it is what the plaintiff seeks to recover. And it is beyond dispute that, from the moment his lawsuit was filed, Brite sought lost future wages and benefits. Indeed, he quit looking for a job months before filing suit; and he never sought reinstatement.

Finally, Brite argues "USAA has not proven that Brite's jurisdictional allegations in his original petition were an 'obvious fraudulent and bad faith maneuver' [to] confer jurisdiction on the trial court." I disagree. I believe the record, taken as a whole, establishes that Brite's trial attorney filed the Original Petition with full knowledge that Brite sought far more than $100,000 in actual damages and purposefully drafted the Original Petition to conceal that fact by omitting the statement required by Rule 47(b) that the claimed damages are "within" the court's jurisdictional limits. A full statement of the procedural background of this case insofar as it involves the jurisdictional question supports my belief. But whether my belief is correct or not is immaterial. Brite's Second Amended Petition, when viewed in light of the applicable law, conclusively establishes that Brite sought more than $100,000 in actual damages from the moment his Original Petition was filed. Indeed, he sought well over $1 million. Accordingly, I would reverse the trial court's judgment and dismiss the cause. Brite would then have sixty days in which to refile his suit in the district court. *See Allright*, 590 S.W.2d at 735–36 ("Since the county court at law was without jurisdiction in this case, appellee may, of course, refile in the proper court within sixty days of the date that this decision becomes final.") (citing the predecessor of section 16.064 of the Texas Civil Practice and Remedies Code); *Allright, Inc. v. Guy*, 696 S.W.2d 603, 605 (Tex.App.-Houston [14th Dist.] 1985, no writ) (holding that Guy's compliance with court's instructions in first appeal precluded Allright's statute of limitations argument).