Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★       ★ ★ ★



# MEMORANDUM OPINION

No. 04-08-00737-CV

**CITY OF LAREDO**,
Appellant

v.

Hilda **NEGRETE**,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2006-CVQ-001879 D2
Honorable Raul Vasquez, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:   February 10, 2010

AFFIRMED IN PART AND REVERSED AND RENDERED IN PART

Hilda Negrete sued the City of Laredo ("the City") under Chapter 21 of the Texas Labor Code, alleging claims for hostile work environment and retaliation. *See* TEX. LAB. CODE ANN. §§ 21.051, 21.055 (Vernon 2006). The jury found in favor of Negrete on both of her claims, and she was awarded $300,000 in compensatory damages plus attorneys' fees. We reverse the trial court's judgment to the extent that it awards Negrete conditional appellate attorneys' fees and render

judgment that Negrete is not entitled to such fees. The trial court's judgment is affirmed in all other respects.

## BACKGROUND

The Laredo City Council adopted a sexual harassment policy in October 2000 to "provide a productive and professional work environment free from all forms of discrimination, including harassment." The policy adopted by the City prohibits "any form of sexual harassment whether it be visual, verbal or physical, and without regard to whether the harasser is a supervisor, co-worker, vendor, or customer." Examples of prohibited conduct under the City's sexual harassment policy include: "unwelcome discussion of sexual activities, touching, display of sexually explicit or suggestive pictures or cartoons, making sexually suggestive gestures, sexual remarks about physical attributes, unwelcome propositions, profanity and off-colored jokes." The policy also prohibits "sending, showing, sharing, or distributing any form of inappropriate jokes, pictures, stories . . . via facsimile, internet, voice mail or other electronic means."

The City's sexual harassment policy requires employees to report incidents of harassment to prevent violations going undetected and provides procedures for reporting an incident of harassment. For example, when a City employee believes he or she is the subject of sexual harassment, the City's sexual harassment policy requires the employee to confront the alleged offender and tell him or her to stop the offensive conduct. If the employee is uncomfortable confronting the alleged offender or the offender continues to commit the offensive conduct after being told to stop, the employee is to report the matter to a supervisor or a department director. The policy provides several other ascending levels of administration for the employee to report to if the employee remains dissatisfied with the handling of his or her complaint or experiences retaliation

in response to filing a complaint. Finally, if the employee remains dissatisfied with the handling of his or her complaint or experiences retaliation due to having filed a complaint or assisting in a sexual harassment investigation, the employee is required to notify the City Manager.

Negrete was hired by the City as a Deputy Secretary in the Office of the City Secretary in July 2001 and was notified about the City's sexual harassment policy. Negrete reported directly to the City Secretary of Laredo, Gustavo Guevara, who was Negrete's supervisor and department director for purposes of the City's sexual harassment policy. Beginning around April 2005, Guevara began making unwelcome advances toward Negrete. He began calling Negrete after hours and asking her out for dinner and drinks. Guevara also sent Negrete flowers at the office on two occasions under the pseudonym "Ramiro Ramirez." In addition to making unwelcome advances toward Negrete, Guevara began making inappropriate comments to her about his wife as well as other remarks Negrete deemed sexist in nature.[1]

In August 2005, Guevara created an image superimposing Negrete's face onto a scantily clad woman's body and showed it to several individuals. Negrete confronted Guevara about the image and told him that she was "humiliated and embarrassed" by the image he created. Guevara apologized for his conduct and told Negrete he did not intend to offend anyone. Guevara, however, continued to commit offensive acts following his conversation with Negrete. Sometime during the fall of 2005, Guevara approached Negrete in a stairwell and gave her an unsolicited hug. He later mounted a female intern, who had bent down to pick up some disks, and pretended to ride her like

---

[1] According to Negrete, Guevara made a sexist remark to her while they were preparing for an event hosted by the City Secretary's office. The record indicates the remark occurred when Negrete told Guevara to "relax" and he commented "[w]ell meet me at noon and then I can relax."

a horse. Negrete did not personally witness the incident involving the intern, but was nonetheless offended by the conduct when she learned about it.

Negrete claims Guevara made her feel uncomfortable in January 2006 when he hugged her and lifted her up in his arms upon returning to work after the New Year's holiday. Negrete was offended by Guevara again several weeks later when she witnessed him displaying a pornographic image to two other City officials on his office computer.[2] Negrete subsequently contacted the City Attorney, Jaime Flores, to complain about Guevara's offensive behavior.

Flores instructed Negrete to submit a written complaint against Guevara, which she submitted to him the next day.[3] Negrete's sworn complaint against Guevara alleged her superior:

(1) made unwelcome advances and "off the cuff remarks" to her in July 2005;

(2) called her after hours and invited her to dinner and drinks;

(3) created an unflattering image of her in August 2005;

(4) sent two arrangements of roses to her at the office under a pseudonym;

(5) gave her a hug for New Year's Day;

(6) pretended to mount a female intern like a horse; and

(7) displayed a pornographic image to other City officials on his office computer.

---

[2] Negrete was supposed to attend a bid opening for the City later that day, but missed the event because she was too upset to go after the incident in Guevara's office. According to Negrete, she did not attend the bid opening because "there was going to be several male individuals in attendance . . . and [she] didn't feel comfortable being around, supposedly, professional businessmen, and being in that environment at that time."

[3] Because Negrete had not previously notified anyone from the Administrative Services Department about Guevara's conduct, Flores contacted the Administrative Services Department on her behalf. The City Manager later made Flores the Administrative Services's designee for purposes of handling Negrete's complaint.

Negrete returned to work following her complaint, but later decided to go out of town for the weekend. After Negrete left work, Guevara called her repeatedly. Negrete became worried someone had spoken to him about her complaint.

When Negrete returned from her trip, Negrete found a note from Guevara affixed to her apartment door.[4] Negrete was alarmed by the fact that Guevara had come to her residence looking for her and decided to spend the night at a hotel.[5] When Negrete returned to her apartment the next morning to get ready for work, Guevara appeared at her door. Negrete immediately called the City Attorney, the City Manager, and the police. Cynthia Collazo, the Deputy City Manager, later escorted Negrete to City Hall, where she met with Larry Dovalina, the City Manager, about Guevara's conduct. Dovalina informed Negrete that the City was going to transfer her to the Airport Department "to work on a [temporary] special project" out of concern for her safety.

The City immediately retained a third party investigator to review Negrete's complaint. The investigator, Elizabeth Provencio, interviewed Negrete as part of her investigation and learned Negrete also felt offended when Guevara:

(1) asked her for some sort of gratification by telling her to "Help [him] relax" when they were preparing for a City event;

(2) told her she was beautiful on three occasions; and

---

[4] Guevara's note read as follows:

Hilda:

If you have problems, please let me know, so I can help you. If you need some time to think things over, that's fine. If it is something at work that I did, then I apologize. I have been under much stress, and I might have been rude to you and other persons in the office. You are my best employee, and I do not want to lose you. You have friends in the office, and we would like to help you.

Mr. G

[5] According to Guevara, he did not know Negrete had filed a sexual harassment complaint against him at this time.

(3) implied he wanted to say something personal to her during a telephone conference when she was in the presence of one of her coworkers.

Provencio concluded her investigation within three weeks of Negrete having filed her complaint and presented the Laredo City Council with her findings. She ultimately concluded Guevara violated City policy by: (1) creating the unflattering image of Negrete; (2) pretending to mount an intern like a horse; and (3) displaying a pornographic image on his computer.

After reviewing Provencio's report, the Laredo City Council concluded Guevara's conduct warranted punishment. Guevara received a thirty-day suspension without pay and was ordered to attend sexual harassment training. He was also required to issue a letter of apology to Negrete and his staff. The punishment levied against Guevara was one of the most severe punishments ever imposed upon a City employee.

Negrete began working at the Airport Department shortly after her meeting with Dovalina. The Airport Department, however, was unprepared for Negrete's arrival. It took the Airport Department at least a week to get Negrete a computer and even longer to assign her some of her job duties. Negrete answered phones when she began working at the airport and was eventually assigned other basic tasks like attending Airport Advisory Committee meetings, handling mail, and working on daily cash deposits.

After Negrete began working at the Airport Department, the City inquired about making her reassignment permanent. Negrete informed the City that she would continue working at the Airport Department "if the City feels that I could be officially transferred to this Department and I would have some legitimate duties, then I would like to continue working at the Airport." Negrete was thereafter permanently reassigned to the Airport Department. Although Negrete did not feel she was getting any additional "legitimate" job responsibilities in her new position, she did not express her

dissatisfaction to anyone or request that her job responsibilities be changed.[6]  Following her reassignment to the Airport Department, Negrete received a three-percent merit increase to her salary and a promotion to Administrative Assistant I.  The promotion to Administrative Assistant I gave Negrete greater opportunity for advancement within the City, which would have been unavailable to Negrete had she remained in her Deputy City Secretary IV position at the Office of the City Secretary.

Negrete subsequently filed suit against the City under Chapter 21 of the Texas Labor Code, alleging claims for hostile work environment and retaliation.  Specifically, Negrete alleged the City created a hostile work environment and "instituted a campaign of retaliation against [her] culminating in her demotion."  The City answered, claiming Negrete's claims were barred because it took prompt remedial action in response to her allegations.  The City also claimed Negrete failed to comply with the procedures set forth in its sexual harassment policy, which deprived the City of an "opportunity to correct or prevent the problem immediately."  The City further claimed Negrete did not suffer any adverse employment action when she was transferred to the Airport Department.  Finally, the City responded that there "is no causal connection between the protected activity and any adverse employment action" because it was taking every measure and precaution to protect Negrete from Guevara.

The case proceeded to trial before a jury.  After the trial court denied the City's motion for instructed verdict, the jury found in favor of Negrete.  The jury found Negrete was subjected to sexual harassment by the creation of a hostile work environment and determined the City was not

---

[6] The record shows that one of Negrete's additional job responsibilities involved putting together a questionnaire for passengers who arrive at the airport.  Negrete testified it took her only one day to complete this task.  The City proffered evidence at trial suggesting Negrete was also responsible for numerous other tasks and projects at the Airport Department.  Negrete, however, denied having been assigned the list of tasks referred to by the City.

legally excused from responsibility for the harassment. The jury also determined the City retaliated against Negrete for filing her sexual harassment complaint against Guevara. The jury awarded Negrete $250,000 for past compensatory damages, $250,000 for future compensatory damages, and $225,000 for attorney's fees based upon the "illegal conduct."[7] The trial court subsequently granted the City of Laredo's motion for remittitur, reducing the attorney's fees award to $215,400; applied the statutory damage cap for compensatory damages, reducing the total compensatory damages awarded by the jury to $300,000; and awarded Negrete $10,000 in conditional appellate attorneys' fees. The court denied the City of Laredo's motions for judgment notwithstanding the verdict and new trial, and this appeal followed.

### STANDARD OF REVIEW

In its first issue, the City contends there is legally and factually insufficient evidence to support the jury's finding that Negrete was subjected to sexual harassment by Guevara. When reviewing a legal sufficiency or "no evidence" challenge, we determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Id.* Appellate courts will sustain a legal sufficiency or "no evidence" challenge when: (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the

---

[7] The attorneys' fees awarded by the jury were for counsels' pretrial preparation and the trial. We also note that it does not appear the City asked the trial court to require Negrete to elect her damages after she prevailed on both her hostile work environment and retaliation claims.

evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). By contrast, when reviewing a factual sufficiency challenge, we consider and weigh all the evidence supporting and contradicting the finding. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

"Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony." *City of Keller*, 168 S.W.3d at 819. A jury confronted with conflicting evidence may choose to believe one witness and disbelieve others. *Id.* The jury may also resolve inconsistencies in the testimony of any witness, and it may accept lay testimony over that of experts. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

### HOSTILE WORK ENVIRONMENT

Chapter 21 of the Texas Labor Code makes it unlawful for an employer to discriminate against an employee with respect to compensation or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, national origin, or age. TEX. LAB. CODE ANN. § 21.051. Sexual harassment is a form of sex discrimination prohibited by the Labor Code. *Green v. Indust. Specialty Contractors, Inc.*, 1 S.W.3d 126, 131 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Syndex Corp. v. Dean*, 820 S.W.2d 869, 871 (Tex. App.—Austin 1991, writ denied). The provisions of Chapter 21 are modeled after Title VII of the Federal Civil Rights Act; therefore, courts may look to federal precedent for guidance when interpreting the statute. *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999).

There are two distinct categories of sexual harassment claims: (1) quid pro quo harassment, in which employment benefits are conditioned on sexual favors; and (2) hostile work environment harassment, in which harassment creates a hostile or offensive work environment. *Staller v. Serv. Corp. Int'l*, No. 04-06-00212-CV, 2006 WL 3018039, *3 (Tex. App.—San Antonio 2006, no pet.) (mem. op.). This case presents allegations of sexual harassment based on a hostile work environment. Courts have recognized "[a] claim for a sexually hostile working environment is not a trivial matter." *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995). Hostile work environment claims are serious and serve "to level the playing field for women who work by preventing others from impairing their ability to compete on an equal basis with men." *Id.* "A hostile work environment claim embodies a series of criteria that express extremely insensitive conduct against women, conduct so egregious as to alter the conditions of employment and destroy their equal opportunity in the workplace." *Id.*

To establish the elements of a hostile work environment claim, a plaintiff must show: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take adequate remedial action. *Green*, 1 S.W.3d at 131. When, as in this case, the alleged harassment is perpetrated by a supervisor with immediate or successively higher authority, the employee need only satisfy the first four elements set forth above. *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

"To affect a term, condition, or privilege of employment, the harassing conduct 'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Aryain v. Wal-Mart Stores of Tex., LP*, 534 F.3d 473, 479 (5th Cir.

2008) (quoting *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007)).

The work environment must be "'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Id.* When determining whether a hostile work environment exists, we must review the totality of the circumstances, including: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance. *Staller*, 2006 WL 3018039 at *4. "Central to the court's inquiry into a hostile environment claim is whether the alleged harasser's actions have undermined the victim's workplace competence, discouraged h[er] from remaining on the job, or kept h[er] from advancing in h[er] career." *City of Houston v. Fletcher*, 166 S.W.3d 479, 490 (Tex. App.—Eastland 2005, pet. denied).

Negrete's complaint concerns acts committed by Guevara during an approximate ten-month period from April 2005 to February 2006. The record establishes Guevara called Negrete on her cell phone multiple times, often late at night and on weekends, to ask her out for dinner and drinks. On at least one occasion Guevara called Negrete at home as late as 10:00 P.M. and offered to bring her food and drinks; she refused his offer. Guevara sent flowers to Negrete at her office on two occasions and then complained that she failed to thank him for the flowers. Negrete stated she was embarrassed and humiliated and did not want her co-workers to know that Guevara had sent the flowers. Guevara also gave Negrete unsolicited and unwelcomed hugs on two occasions, and on one of those occasions he tried to make her walk into his office and come behind his desk for him to hug her. Negrete complained that Guevara created an unflattering image of her by superimposing her face on an image of a scantily clad woman with very large breasts and then displaying it to other co-

workers, including a male co-worker. She testified that she felt "crushed" and humiliated as a female. Additionally, Guevara displayed two different pornographic images on his office computer in her presence. Once when Negrete was in Guevara's office, he beckoned her to his desk and then showed her an email on his computer that depicted a man dressed as a priest or monk with an exposed enlarged penis. Another time Negrete entered Guevara's office when two male City officials – the Chief of Police and the Fire Chief – were in his office and saw that Guevara was displaying on his computer a pornographic image of individuals engaged in sexual conduct. As previously noted, Guevara pretended to mount a female intern like a horse; made sexually suggestive comments to Negrete about "helping him relax," with the connotation being that she should engage in intimate conduct with him; made unsolicited remarks to her about her beauty; and made "off the cuff remarks" to her that had sexual connotations. Negrete further testified that Guevara told jokes, often in Spanish, that were sexist or racist in nature. On several occasions Guevara remarked in vulgar terms about his prior sexual exploits with women who walked past his office, saying in Spanish that he had already made love to them. Finally, Negrete testified that Guevara complained to her about his sexual relationship with his wife.

These incidents involving Guevara are inexcusable, and evince a pattern of severely harassing and humiliating conduct on his part. While Guevara's conduct did not cause a tangible decline in Negrete's work product,[8] there is evidence demonstrating it made it more difficult for Negrete to perform her job well. Negrete testified that Guevara's unsolicited attention embarrassed and humiliated her, and that she felt degraded and belittled by his conduct. In addition to making it more difficult for Negrete to perform her job, the record contains evidence demonstrating Guevara's

---

[8] Negrete testified she could not afford to let her work product suffer because she is a single parent and needed her job to support her child.

behavior eventually caused Negrete to miss work-related events. A jury could reasonably conclude from the evidence presented that Guevara's conduct had a negative impact upon Negrete and unreasonably interfered with her job performance.

In addition to the acts described above, the jury heard evidence that Guevara appeared at Negrete's apartment on two different occasions.[9] The jury was free to conclude that Guevara's decision to confront Negrete at her apartment constituted an intimidation tactic and an unwelcomed intrusion on her personal life. This conduct provides further confirmation his conduct created an abusive work environment. Not only did Guevara's presence at Negrete's apartment upset Negrete, it caused her to fear for her safety to the extent that she and her young son spent a night at a hotel. When Guevara returned to the apartment while Negrete was home, she was so distraught that she ultimately called 911. Indeed, she placed the call to 911 after an employee in the City Manager's office recommended that she do so. The jury could have reasonably concluded from this evidence that Negrete's subjective view of Guevara's conduct as abusive was shared by an objective view of the City employee. *See Aryain*, 534 F.3d at 479 (noting that work environment must be both objectively and subjectively offensive). We conclude the aforementioned evidence, when viewed in totality, is legally and factually sufficient to demonstrate Negrete was subjected to a hostile work environment. *See Dillard Dep't Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 407-08 (Tex. App.—El Paso 2002, pet. denied) (upholding a jury verdict on a hostile work environment claim where a supervisor pressed up against an employee on many occasions so that the employee could feel the supervisor's penis; made sexually suggestive remarks; stuck his tongue in the plaintiff's mouth;

_____

[9] The City acknowledged during oral argument that we may consider the incidents at Negrete's apartment during our assessment of Negrete's hostile work environment claim.

flirted with male customers; called the plaintiff his "little pumpkin"; hugged, rubbed, and stroked the plaintiff in a caressing way; and poked the plaintiff in the buttocks with a shoe box).

## AFFIRMATIVE DEFENSE

The City nevertheless claims it was legally excused from responsibility for the sexual harassment caused by Guevara because the evidence conclusively establishes an affirmative defense to Negrete's harassment claim. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). To establish its affirmative defense, the City was required to establish: (a) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *See Lauderdale*, 512 F.3d at 164.

Negrete claims the City failed to satisfy the second prong of its affirmative defense because the record shows she took advantage of the City's sexual harassment prevention policies as she was required to do. The record reveals the City's sexual harassment policy offers employees several avenues for reporting sexual harassment. The City's policy instructs an employee to confront his or her harasser. If the employee does not feel comfortable confronting the alleged offender or the offender continues to commit the offensive conduct after being told to stop, the employee is instructed to report the matter to a supervisor or a department director, provided he or she feels comfortable doing so. The City's policy states that if the employee does not feel the supervisor or department director has resolved the matter to the employee's satisfaction, or the employee does not feel comfortable discussing the matter with the supervisor or department director, the employee should contact the administrative services director/designee. If the employee remains dissatisfied

with the handling of his or her complaint or experiences retaliation due to having filed a complaint or assisting in a sexual harassment investigation, the employee is required to notify the City Manager.

The record shows Negrete confronted Guevara, who was both her supervisor and her department director, after he created the unflattering image of her. Likewise, Negrete testified that she often reacted with disgust when Guevara made inappropriate comments or told offensive jokes, leaving little doubt that she did not approve of his conduct. When Guevara persisted in engaging in offensive behavior, Negrete brought her complaint to the attention of the Administrative Services Department through Flores, who eventually became the Designee for the Administrative Services Department. Dan Migura, the Administrative Services Director at the time Negrete filed her sexual harassment complaint, affirmed at trial that Negrete had sufficiently availed herself of the City's sexual harassment reporting procedures and needed to take no additional steps in connection with her complaint. Based on the record before us, we agree with Negrete that the City failed to conclusively establish its affirmative defense. *See Prudential Ins. Co. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (stating a trial court may direct verdict for defendant if plaintiff admits or evidence conclusively establishes a defense to the plaintiff's cause of action).

## CHARGE ERROR

The City further asserts the trial court committed charge error in connection with its affirmative defense. Specifically, the City complains the trial court erred in instructing the jury: "You are instructed that you may consider the disciplinary action given by the [City] to [Guevara], however, you are further instructed that you shall not consider whether the disciplinary action given by [the City] to [Guevara] was sufficiently severe or not severe enough in determining whether the

[City] corrected the alleged inappropriate behavior." According to the City, this instruction improperly allowed the jury to consider the severity of the disciplinary taken by the City against Guevara for purposes of deciding its affirmative defense.

A trial court has broad discretion in submitting instructions to the jury. *See Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding principles. *Wal-Mart Stores, Inc. v. Middleton*, 982 S.W.2d 468, 470 (Tex. App.—San Antonio 1998, pet. denied). A jury instruction is proper if it: (1) assists the jury; (2) accurately states the law; and (3) finds support in the pleadings and evidence. *Id.* Even an erroneous instruction does not require reversal if it did not cause the rendition of an improper judgment. TEX. R. APP. P. 44.1(a) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of . . . probably caused the rendition of an improper judgment."). To determine whether the submission or refusal to submit an instruction probably resulted in an improper judgment, we review the entire record. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998).

We believe the trial court acted within its discretion when it instructed the jury as it did. Initially we note that the instruction specifically informed the jury that it was *not* to consider the severity of the punishment taken by the City against Guevara. The City points to no case law suggesting the court's instruction inaccurately stated the law or was designed to mislead the jury in any way. Nevertheless, even if we were to assume the trial court erred by including the severity of discipline instruction in the jury charge, we do not believe the inclusion of the instruction was harmful because the instruction was not needed by the jury to reach its verdict. Because the jury did

not necessarily need to consider the evidence relating to the severity of Guevara's discipline when answering the charge question relating to the City's *Ellerth/Faragher* affirmative defense, we cannot say the trial court's inclusion of the instruction probably resulted in an improper judgment.

### ATTORNEYS' FEES

Lastly, the City claims there is legally and factually insufficient evidence to support the award of attorneys' fees to Negrete. "As a general rule, the party seeking to recover attorney fees carries the burden of proof." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). A determination of reasonable attorney's fees is a question for the trier of fact. *Id.* at 12. The amount of a fee award rests in the sound discretion of the trial court, and its judgment will not be reversed on appeal absent a clear abuse of discretion. *Cordova v. Sw. Bell Yellow Pages, Inc.*, 148 S.W.3d 441, 446-47 (Tex. App.—El Paso 2004, no pet.). Even though the appropriate standard of review is abuse of discretion, we may nevertheless review a fee award for sufficiency of the evidence. *See Stewart Title*, 822 S.W.2d at 11.

Among the factors most frequently considered in determining the reasonableness of attorney's fees are: (1) the time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur*

*Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). Importantly, a litigant is not required to present evidence on each of these factors. *Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 897-98 (Tex. App.—Dallas 2003, no pet.); *Acad. Corp. v. Interior Buildout & Turnkey Constr., Inc.*, 21 S.W.3d 732, 742 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The trier of fact may also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties in determining the reasonableness of the attorney's fees. *Burnside Air Conditioning*, 113 S.W.3d at 897.

**A. Trial Fees**

The trial court submitted an issue on trial attorneys' fees, and the jury awarded reasonable attorneys' fees to Negrete in the amount of $225,000 for "preparation and trial." The trial court subsequently granted a motion for remittitur and reduced the attorneys' fees awarded by the jury to $215,400. Contrary to the City's contention, we believe the record before us contains sufficient evidence to support an award of $215,400 for trial attorneys' fees. The record shows Negrete's lead attorney, Doanh T. Nguyen, who is board certified in labor and employment law, provided testimony regarding the hourly billing rate for each of the members of Negrete's legal team and the hours they spent in connection with the case. He testified novel and difficult issues existed in this contingency fee case, and noted the attorneys' efforts preparing for trial were substantial. According to Nguyen, this case "rank[ed] up there, as far as the amount of time for preparation" and that "this is time that, you know, spend on one case versus another." Nguyen testified the fees charged in this case are reasonable based upon his experience and expertise and that $222,327.50 is the amount of fees

reasonable and necessary to prosecute Negrete's case. In light of the record, we must reject the

City's sufficiency challenge concerning trial attorneys' fees.[10]

## B. Appellate Fees

The trial court's judgment conditionally awards Negrete $10,000 for appellate attorneys' fees.

It is well-settled a trial court's award of attorney's fees may include appellate attorney's fees. *Siegler*

*v. Williams*, 658 S.W.2d 236, 241 (Tex. App.—Houston [1st Dist.] 1983, no writ). "However, there

must be evidence of the reasonableness of fees for appellate work to support the award of appellate

attorney's fees." *Keith v. Keith*, 221 S.W.3d 156, 169 (Tex. App.—Houston [1st Dist.] 2006, no

pet.).

Negrete failed to introduce any testimony to prove the amount of reasonable and necessary

attorneys' fees in the event of an appeal in this matter. Thus, there is no evidence in the record to

support the trial court's award of $10,000 for appellate attorneys' fees. Because there is no evidence

in the record to support an award of attorneys' fees for an appeal, we must sustain the City's

challenge regarding the award of appellate attorneys' fees.

## CONCLUSION

The record reveals that the City of Laredo's anti-sexual harassment policy failed to protect

a City employee from on-going and pervasive harassment. The record establishes both objectively

and subjectively that Negrete was subjected to a hostile work environment. Additionally, the record

fails to establish that the City proved its affirmative defense as a matter of law, thus the trial court

did not err in denying the City's motion for instructed verdict and motion for judgment *non obstante*

---

[10] The City alleges there is insufficient evidence to support the award of trial attorneys' fees because Negrete failed to present evidence as to each of the *Arthur Andersen* factors. As previously noted, however, there is no requirement that the plaintiff present evidence as to each of the *Arthur Anderson* factors. *Acad. Corp.*, 21 S.W.3d at 742.

*verdicto*. However, the trial court erred in granting conditional appellate attorneys' fees because no evidence was offered to support the award. Based on the foregoing, the portion of the trial court's judgment awarding $10,000 in conditional appellate attorneys' fees is reversed and judgment is rendered that Negrete is not entitled to recover appellate attorneys' fees. *See Cantu v. Moore*, 90 S.W.3d 821, 826 (Tex. App.—San Antonio 2002, pet. denied). We affirm the trial court's judgment in all other respects.

Catherine Stone, Chief Justice