IN THE SUPREME COURT OF TEXAS
 
════════════
No. 09-0941
════════════
 
Service Corporation 
International and SCI Texas Funeral Services, Inc., d/b/a Mont Meta Memorial 
Park, Petitioners,
 
v.
 
Juanita G. Guerra, Julie Ann 
Ramirez, Gracie Little and Mary Esther Martinez, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Thirteenth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued December 
19, 2010
 
 
            
Justice Johnson delivered 
the opinion of the Court.
 
            
In this appeal we address whether the evidence was sufficient to support 
jury findings that (1) both the corporation that owned and operated a cemetery 
and its parent corporation were liable for actions of the cemetery’s employees, 
and (2) the daughters and widow of a decedent suffered compensable mental 
anguish because the decedent’s body was disinterred and moved to another grave 
without permission.  We also address whether evidence of other lawsuits 
against the cemetery owner was properly admitted.
            
Marcos Guerra was buried at Mont Meta Memorial Park cemetery in a plot 
that had been sold to someone else.  His family refused the cemetery’s 
request that it be allowed to move the body to another burial plot, but the 
cemetery did so anyway.  When family members discovered that Mr. Guerra’s 
body had been moved, his daughters and widow sued both SCI Texas Funeral 
Services, Inc. d/b/a Mont Meta Memorial Park (SCI Texas), the corporation that 
owned and operated the cemetery, and its parent corporation, SCI Corporation 
International (SCI International).  Pursuant to a jury verdict, the trial 
court rendered judgment against both corporations for actual and exemplary 
damages.  The court of appeals modified the judgment as to exemplary 
damages and otherwise affirmed.
            
We hold that there was legally insufficient evidence to support either 
the liability findings against SCI International or the mental anguish findings 
in favor of Mr. Guerra’s daughters.  We further hold that the trial court 
erred by admitting evidence of other lawsuits, verdicts, and judgments against 
SCI Texas.  We reverse and render in part and remand for a new trial in 
part.
I.  Background
            
SCI Texas owns and operates several cemeteries in Texas, including Mont 
Meta Memorial Park in San Benito.  Through an intermediary corporation not 
involved in this litigation, SCI Texas is wholly owned by SCI International.
            
When Mr. Guerra died unexpectedly on October 5, 2001, his family decided 
to have him buried at Mont Meta.  Two of his three daughters, Julie Ann 
Ramirez and Gracie Little, went to Mont Meta and made 
funeral arrangements.  Pursuant to the wishes of their mother, Juanita 
Guerra, Julie and Gracie arranged for Mrs. Guerra to purchase burial plots 5 and 
5X at Mont Meta.  One of the plots was to be used for Mr. Guerra and one 
was to eventually be used by Mrs. Guerra.
            
SCI Texas requires that before a burial takes place a “blind check” of 
the arrangements must be performed by an employee other than the employee who 
made the original arrangements.  The blind check is to verify (1) the 
location of the burial plot to be used, (2) that the plot has not been 
previously sold, and (3) that no one is already buried in the plot.  A Mont 
Meta employee performed the blind check on the day of Mr. Guerra’s burial as 
part of her duties at Mont Meta.  She concluded that the cemetery’s records 
showed plot 5, where Mr. Guerra was to be buried, had been previously sold to 
another family.  She brought this to the attention of her supervisor, who 
concluded that the burial could proceed because plot 5 had been quitclaimed to 
the Guerras.
            
Another Mont Meta employee reviewed the paperwork after the funeral and 
discovered that the supervisor had not been correct: plot 5 had not been 
quitclaimed to the Guerras.  A Mont Meta employee 
contacted the Guerras and told them that the plot 
where Mr. Guerra was buried belonged to someone else.  The Guerras met with Mont Meta’s general manager, Jaye Gaspard, and declined his 
request that the cemetery be allowed to move Mr. Guerra’s body to another 
plot.
            
Sometime after the meeting with Gaspard, the 
Guerras noticed that grass on Mr. Guerra’s grave 
appeared to have been disturbed.  They contacted Mont Meta about the 
situation.  Gaspard responded with a letter in 
which he indicated that resodding had taken place in 
the cemetery and a passageway next to where Mr. Guerra was buried had been 
converted to a plot to ensure that a place beside Mr. Guerra was available for 
Mrs. Guerra.  When the family received deeds for the plots they had 
purchased, however, the deeds were for plots 5X and 5XX rather than 5 and 
5X.  The Guerras suspected that Mr. Guerra’s body 
had been moved and they filed a complaint with the Texas Funeral 
Commission.  Six months later, Vicky Trevino, who was by then general 
manager at Mont Meta,[1] disclosed to the Guerras that they were correct:  Mr. Guerra’s body had 
been moved about 12 to 18 inches laterally into plot 5X.
            
Mrs. Guerra and her daughters Julie, Gracie, and Mary 
Ester Martinez (collectively, the Guerras) sued SCI 
Texas and SCI International.  They asserted causes of action for 
fraud, intentional infliction of emotional distress, negligence, and 
trespass.  A jury found in favor of the Guerras 
on the three liability theories submitted—intentional infliction of emotional 
distress, negligence, and trespass—and awarded damages of $2 million for past 
mental anguish to Mrs. Guerra, $100,000 for past mental anguish to each 
daughter, and allocated responsibility 70% to SCI International and 30% to SCI 
Texas.  The jury also awarded exemplary damages of $3 million against SCI 
International and $1 million against SCI Texas, allocated 70% to Mrs. Guerra and 
10% to each daughter.
            
Both defendants appealed.  The court of appeals modified the 
judgment and reduced the exemplary damages to $750,000 for each defendant in 
accordance with the statutory cap, see Tex. Civ. Prac. & Rem. Code § 
41.008(b), but otherwise affirmed.  ___ S.W.3d ___ at 
___.  In this Court the SCI entities argue that (1) there is no 
evidence to support the finding of liability as to SCI International; (2) there 
is no evidence to support the award of, or the amounts awarded for, mental 
anguish damages; (3) the trial court erred by admitting evidence of suits 
against other SCI Texas cemeteries and of a suit against and settlement entered 
into in Florida by SCI International; (4) two of the liability theories in the 
jury charge were not legally viable and it is impossible to determine if the 
jury awarded damages based on an invalid theory of liability because the charge 
contained only one damages question conditioned on an affirmative finding to any 
of the three liability questions; (5) the trial court erred by admitting 
testimony that Mrs. Guerra would put any punitive damages in a trust for use by 
people who cannot afford funerals; and (6) the jury’s award of damages was 
influenced by an improper “Golden Rule” argument.
            
We begin by addressing the challenge to the legal sufficiency of the 
evidence as to SCI International.
II.  SCI International
            
The charge submitted three liability questions to the jury:  (1) Did 
either of the Defendants intentionally inflict severe emotional distress on the 
Plaintiffs; (2) Did the negligence of either Defendant proximately cause the 
occurrence in question; and (3) Did either Defendant commit a trespass upon the 
property of the Plaintiffs?[2]  Each question required the jury to 
answer separately for SCI International and SCI Texas, and the jury answered 
“Yes” as to each defendant for each question.
            
The Guerras argue that the testimony of several 
cemetery employees who said that they worked for “SCI” and records in Jaye Gaspard’s personnel file with 
the SCI logo and referencing “Service Corporation International” are evidence 
that SCI International employed the Mont Meta workers and was therefore liable 
for their actions.  We disagree.
A.  Standard of Review
            
A no-evidence challenge will be sustained when “(a) there is a complete 
absence of evidence of a vital fact, (b) the court is barred by rules of law or 
of evidence from giving weight to the only evidence offered to prove a vital 
fact, (c) the evidence offered to prove a vital fact is no more than a mere 
scintilla, or (d) the evidence conclusively establishes the opposite of the 
vital fact.”  King Ranch, Inc. v. Chapman, 118 
S.W.3d 742, 751 (Tex. 2003).  Evidence is more than a scintilla if 
it “rises to a level that would enable reasonable and fair-minded people to 
differ in their conclusions.”  Ford Mtr. Co. v. Ridgeway, 135 S.W.3d 598, 601 (Tex. 
2004).  If, however, the evidence does no more than create a mere 
surmise or suspicion and is so slight as to necessarily 
make any inference a guess, then it is no evidence.  Id.  We 
presume that jurors made all inferences in favor of the verdict, but only if 
reasonable minds could do so.  Jurors may not simply speculate that a 
particular inference arises from the evidence.  See 
City of Keller v. Wilson, 168 S.W.3d 802, 821 (Tex. 2005).
B.  Liability Findings
            
Corporations are liable for the negligence of corporate employees acting 
within the scope of their employment.  See St. Joseph Hosp. v. 
Wolff, 94 S.W.3d 513, 541 (Tex. 2002).  But 
except for a few circumstances which the Guerras do 
not claim apply in this case, a corporation is not vicariously liable for the 
negligence of someone who is not its employee.  See id. at 542-43 
(noting that a person may be held liable for the actions of another if he has a 
certain degree of express or implied control over the actor).
            
SCI International first argues that because the jury charge did not 
contain a separate question asking if any of the actors were SCI International 
employees, the Guerras must have conclusively proved 
that they were employees because “all independent grounds of recovery . . . not 
conclusively established under the evidence and no element of which is submitted 
or requested are waived.”  See Tex. R. Civ. P. 279.  We 
disagree.
            
Whether the actors involved in this case were SCI International employees 
was not an independent ground of recovery; the actors’ status as employees was 
an element of the Guerras’ negligence claim 
against SCI International.  See Diamond Offshore Mgmt. Co. v. 
Guidry, 171 S.W.3d 840, 844 (Tex. 2005) (noting that when evidence is 
conflicting regarding whether an employee was acting in the scope of his 
employment at the time of an accident—a prerequisite for imposing vicarious 
liability—a jury finding is required); see also Comm. on Pattern Jury Charges, State Bar of 
Tex., Texas Pattern Jury Charges—General Negligence PJC 7.1 (Comment) 
(2006) (explaining that a question asking whether an actor is an employee of a 
defendant should be used “if there is a factual dispute about the employment 
element essential to a defendant’s vicarious liability”).
            
When an element of a claim is omitted from the jury charge without 
objection and no written findings are made by the trial court on that element 
then the omitted element is deemed to have been found by the court in such 
manner as to support the judgment.  Tex. R. Civ. P. 279; In re J.F.C., 96 S.W.3d 256, 263 (Tex. 
2002).  Here there was no objection to the charge on 
the basis that it omitted the element nor did the trial 
court make findings on it, so there is a deemed finding in support of the 
judgment.  But just as with any other finding, there must be evidence to 
support a deemed finding.  Thus, we next address whether legally sufficient 
evidence supports the finding here.  See In re J.F.C., 96 S.W.3d at 
276; Ramos v. Frito Lay, Inc., 784 S.W.2d 667, 668 (Tex. 1990).
C.  The Evidence
            
The Guerras assert that testimony from persons 
working at Mont Meta supports a finding that they were employed by SCI 
International.  The Guerras point to testimony 
from several cemetery employees to the effect that they worked for “SCI.”  
For example, the Guerras reference testimony by a 
foreman at Mont Meta who testified he was employed “[w]ith the SCI company,” and testimony 
by the employee who worked with the Guerras to pick 
the burial plots that she was employed by “SCI.”  The Guerras also point out that Raymond McMannes, who identified himself as “area vice-president,” 
was asked by the Guerras’ attorney about his 
employment with “SCI” and “SCI” having buried Mr. Guerra in the wrong spot, yet 
McManness did not clarify what “SCI” meant.  
Further, the Guerras reference testimony of Mont 
Meta’s former general manager, Vicky Trevino.
            
We first address Trevino’s testimony.  At trial she affirmatively 
answered a question from the Guerras’ attorney 
inquiring whether she stated in her deposition that she worked for “Service 
Corporation International, SCI.”  Although she made the acknowledgment in 
her trial testimony, her deposition testimony, which was shown to the jury in a 
video, was actually that Trevino was employed by “SCI.”  And during her 
trial cross examination about her deposition testimony, she did not waiver in 
maintaining that she worked for SCI Texas, SCI Texas operates Mont Meta, and SCI 
Texas employed the people who worked at Mont Meta.  Taking her testimony in 
context, as we must, it is no evidence that Trevino or any of the other cemetery 
employees were employed by SCI International.  See City of Keller, 
168 S.W.3d at 812 (“[E]vidence cannot be taken out of 
context in a way that makes it seem to support a verdict when it in fact never 
did.”); Bastrom Seating, Inc. v. Crane 
Carrier Co., 140 S.W.3d 681, 684 (Tex. 2004) (holding that comments from 
deposition read out of context at trial were not evidence of a product defect 
when the comments were considered in context and clarified by the expert who 
made them).
            
Apart from Trevino’s testimony, which we have determined was no evidence 
when properly considered in context, the testimony that the Guerras claim supports a finding that the cemetery workers 
were employed by SCI International were statements about “SCI.”  Both SCI 
entities had the initials SCI in their name and were referred to as SCI by 
witnesses and the attorneys throughout the trial.  Statements that the 
workers were employed by “SCI” only allow for speculation that they were 
employed by SCI International.  And findings based on evidence that allows 
for no more than speculation—a guess—are based on legally insufficient 
evidence.  See City of Keller, 168 S.W.3d at 827 (“[L]egal-sufficiency review in the proper light must credit 
favorable evidence if reasonable jurors could, and disregard contrary evidence 
unless reasonable jurors could not.”).  Thus, under this record, testimony 
that “SCI” employed the cemetery workers is no evidence they were employed by 
SCI International.
            
The Guerras also point to testimony from a 
former family service counselor supervisor at Highland Memorial Park in Weslaco 
that he was employed by “Service Corporation International.”  According to 
the testimony, Highland Memorial Park was owned by “SCI.”  But there was no 
evidence that the Mont Meta workers had the same employer as the Highland 
Memorial Park workers, even assuming the Highland workers were employed by SCI 
International.  The former Highland Memorial Park employee’s testimony is 
no evidence that Service Corporation International employed the Mont Meta 
workers.
            
The court of appeals referenced the presence of the SCI logo on Jaye Gaspard’s personnel paperwork 
as evidence that he was employed by SCI International.  But in contrast to 
the Guerras’ assertions as to SCI International’s 
relationship to the cemetery employees, the President of SCI Texas, William 
O’Brien, testified that SCI Texas is a wholly owned subsidiary of SCI 
International; SCI Texas contracted with Mrs. Guerra; SCI International does not 
have any employees; SCI International does not own or operate any funeral homes 
or cemeteries; and SCI International’s only assets are shares of stock in 
subsidiary companies.  O’Brien also testified that all SCI-related 
businesses were authorized to use the SCI logo.  Thus, the presence of the 
SCI logo on Gaspard’s personnel documents was as 
consistent with employment by SCI Texas as it was with employment by SCI 
International, and the inference that SCI International employed Gaspard was no greater than the inference that SCI Texas 
employed him.  Accordingly, the inferences were equal and the presence of 
the logo on the documents was legally insufficient to support a finding that 
Gaspard was employed by SCI International.  
See id. at 813 (“When the circumstances are 
equally consistent with either of two facts, neither fact may be inferred.”); 
All Star Enters., Inc. v. Buchanan, 298 S.W.3d 404, 423-24 (Tex. 
App.—Houston [14th Dist.] 2009, no pet.) (noting that under the equal inference 
rule, where the names of a number of affiliated companies began with “Antero 
Resources,” invoices addressed to “Antero Resources” were no evidence that the 
vendors were referring to one particular company); see also BMC Software 
Belgium, N.V. v. Marchand, 83 S.W.3d 789, 800 
(Tex. 2002) (finding that use of letterhead containing “BMC Software” by two 
corporations was not evidence that those corporations failed to observe 
corporate formalities where both corporations had “BMC Software” as part of 
their names).
            
The Guerras also assert that an “employee 
requisition” form in Jaye Gaspard’s personnel file is evidence that Mont Meta’s 
funeral director was employed by SCI International because the top of the form 
states “Service Corporation International.”  But the form also contained a 
blank space for “Location or Department Name” which stated “Mont Meta/Restlawn/Cox Funeral Home.”  William O’Brien explained 
that the form was supplied by SCI International but Mont Meta was making a 
requisition request for Mont Meta.  He explicitly denied that the request 
was for someone to be employed by SCI International.  Under this record, 
the “Service Corporation International” heading on the form was legally 
insufficient to support a finding that SCI International employed any of the 
Mont Meta workers.
            
Citing Wal-mart Stores, Inc. v. 
Middleton, 982 S.W.2d 468, 470 (Tex. App.—San Antonio 1998, pet. denied), 
the Guerras also claim that SCI’s failure to produce 
evidence that would show the Mont Meta workers did not work for SCI 
International is itself evidence that they worked for SCI International.  
But Middleton is a spoliation case, and the Guerras have not asserted that spoliation of evidence was at 
issue here.  See id.  (“[T]he deliberate spoliation of evidence 
relevant to a case raises a presumption that the evidence would have been 
unfavorable to the cause of the spoliator.”).  Further, SCI presented 
direct evidence through the testimony of O’Brien, the President of SCI Texas, 
that the Mont Meta workers were not employed by SCI International.
            
In sum, we agree with SCI International that there was legally 
insufficient evidence to support liability findings against it.  That 
determination requires judgment to be rendered in its favor.  Therefore, we 
will not address SCI International further except as necessary to resolve the 
issues asserted by SCI Texas.  For ease of reference SCI Texas generally 
will be referred to from now on as “SCI.”
 
 
III.  Mental Anguish 
Damages
            
SCI claims there was legally insufficient evidence to support the jury’s 
findings that the Guerras suffered compensable mental 
anguish, or in any event, to support the amount of damages awarded.  We 
disagree in part.  As to Mrs. Guerra, the evidence was sufficient to 
support some damages for mental anguish.  As to Julie, Gracie, and Mary 
Ester, the evidence was legally insufficient to support any mental anguish 
damages.
A.  Nature of Evidence Required
            
Generally, an award of mental anguish damages must be supported by direct 
evidence that the nature, duration, and severity of mental anguish was 
sufficient to cause, and caused, either a substantial disruption in the 
plaintiff’s daily routine or a high degree of mental pain and distress.  
Bentley v. Bunton, 94 S.W.3d 
561, 606 (Tex. 2002).  Citing Parkway Co. v. Woodruff, 901 
S.W.2d 434, 444 (Tex. 1995), the court of appeals stated that such direct 
evidence is not necessarily required in cases involving particularly shocking or 
disturbing events or injuries because those events or injuries in and of 
themselves support an inference that mental anguish accompanied them.  
___ S.W.3d at ___.  The court noted that one such 
disturbing event we recognized in Parkway is the mishandling of a 
corpse.  Id.  The Guerras also assert 
that this is such a case—the events were particularly disturbing and upsetting, 
permitting the jury to infer mental anguish.  They point to our citation in 
Parkway of Pat H. Foley & Co. v. Wyatt, 442 S.W.2d 904, 907 
(Tex. Civ. App.—Houston 1969, writ ref’d n.r.e.), where we noted that the mishandling of a corpse 
involves disturbing events.  Parkway, 901 S.W.2d 
at 443.  But we cited Wyatt as an example of a case involving 
events that justified mental anguish damages; we did not cite Wyatt as a 
case in which the actions of the defendant or the occurrence itself constituted 
evidence of mental anguish that, absent other evidence, will support mental 
anguish damages.  Id.; see City of Tyler v. Likes, 962 S.W.2d 
489, 495 (Tex. 1997) (citing Wyatt as an example of a contract case 
dealing with an intensely emotional subject and in which mental anguish is 
compensable and foreseeable if a duty is breached).  Even when an 
occurrence is of the type for which mental anguish damages are recoverable, 
evidence of the nature, duration, and severity of the mental anguish is 
required.  See Bentley, 94 S.W.3d at 606 (citing 
Parkway, 901 S.W.2d at 444); Likes, 962 S.W.2d at 495.
B.  The Daughters
            
There was little evidence from the daughters about how the events 
specifically affected them.  Julie testified that “[t]his has been the 
hardest thing that I have had to go through with my family and myself.  I 
have had lots of nights that I don’t sleep just thinking” and that it had been 
“very difficult.”  In her complaint letter to the funeral commission she 
stated “I cannot begin to express the frustration and agony we have all gone 
through.”  She testified that she had continued to work, travel, and 
participate in volunteer and other activities.
            
Mary Ester’s testimony about how the events affected her was briefer than 
Julie’s.  Mary Ester stated that “it’s not part of my life.  I didn’t 
have to accept that and I do not accept it and I won’t accept it.”
            
Gracie’s testimony about how she was affected was likewise cursory.  
She testified “[w]e’re not at 
peace.  We’re always wondering.  You know, we were always wondering 
where our father was.  It was hard to hear how this company stole our 
father from his grave and moved him.  That was hard.  And I pray that 
none of you have to go through this.”
            
The Guerras argue that evidence of the impact 
on the family also came from third parties.  For example, the Mont Meta 
employee who helped the Guerras select the plots, testified that she believed the family was still 
bothered by the situation and having to move a body that was buried in the wrong 
place is devastating to any family that has just gone through the mourning 
process.  The president of SCI Texas testified that the Guerras were “really hurt by this” and that there “certainly 
is a level of devastation within their family for this.”  The former 
manager of Mont Meta agreed that a family that had gone through what the Guerras had would suffer “devastation.”
            
These witnesses generally acknowledged that the Guerra family members 
experienced very strong emotional reactions that would be expected from the 
unauthorized moving of a loved one’s body.  But none of the witnesses, 
including the daughters themselves, identified a specific “high degree of mental 
pain and distress” experienced by particular family members, or a substantial 
disruption of any particular family member’s daily routine.  The witnesses 
agreed with the Guerras’ attorney that the family 
generally suffered “devastation,” but generalized, conclusory descriptions of how an event affected a person 
are insufficient evidence on which to base mental anguish damages.  See 
Likes, 962 S.W.2d at 495 (“The invasion of the same legal right may lead to 
extreme anguish in one person while causing essentially no emotional damage to 
another.”); Parkway, 901 S.W.2d at 444 (noting that a factfinder should be provided with adequate details to 
assess mental anguish claims).  The daughters’ statements about their 
emotions, even combined with the statements of the other witnesses, did not 
support the jury finding that the events caused any of the daughters to suffer a 
substantial disruption of their daily routine or a high degree of mental pain 
and distress.  See Gunn Infinity v. O’Byrne, 996 S.W.2d 854, 860-61 
(Tex. 1999) (finding no evidence supported mental anguish damages where claimant 
testified he had a lot of anguish, grief, severe disappointment, and 
embarrassment because those did not rise to a level of a high degree of mental 
pain and distress nor was there evidence of a substantial disruption of his 
daily routine).
            
In sum, the evidence was legally insufficient to support findings that 
any of the daughters suffered compensable mental anguish.
C.  Mrs. Juanita Guerra
            
Mrs. Guerra testified that when she found out her late husband’s grave 
had been tampered with she could not sleep at night and went through a lot of 
stress.  She testified that she suffered burning in her stomach due to the 
stress and sought medical treatment for the symptoms.  She continued to 
have headaches and take medication for anxiety and depression.  She 
indicated that she had been worrying and having fear and anxiety about what 
might be done to her at Mont Meta for nearly six years since Mr. Guerra’s casket 
was moved.  We conclude that there is some evidence to support the jury’s 
finding that Mrs. Guerra suffered the degree of mental pain and distress that 
will support damages for mental anguish.
            
SCI argues that Mrs. Guerra’s daily routine was not substantially 
disrupted because she volunteers at a nursing home, participates in visitation 
with her church, works in the church kitchen, and travels occasionally.  
But even assuming there was no evidence her routine was disrupted, that lack of 
evidence did not negate the evidence that she did suffer compensable 
mental anguish.  See Wackenhut Corr. Corp. v. De La 
Rosa, 305 S.W.3d 594, 640 (Tex. App.—Corpus Christi 2009, no pet.) 
(rejecting a claim that because children who had been 
awarded mental anguish damages were making good grades in school, they were not 
suffering mental anguish).
            
SCI asserts that there was confusion at trial regarding whether Mrs. 
Guerra’s mental anguish concerned future anxiety for which the jury awarded no 
damages.  It points to the Guerras’ attorney’s 
statements such as “Mrs. Guerra’s main anxiety concern is what is this company going to do to her once she is buried.”  
SCI asserts that this apprehension concerns future anxiety for which damages 
were not awarded by the jury.  But Mrs. Guerra’s testimony was that she had 
worried and anguished in the past about what would happen to her and her husband 
when she is buried.  To the extent the testimony supports mental anguish 
damages, it supports damages for anguish in the past and the jury’s answers 
reflect that.
            
SCI urges that if the evidence is legally sufficient to support some 
damages, it is legally insufficient to support the entire amount of damages 
awarded to Mrs. Guerra by the jury.  See Saenz v. Fid. & Guar. Ins. 
Underwriters, 925 S.W.2d 607, 614 (Tex. 1996) (“Not only must there be 
evidence of the existence of compensable mental anguish, there must also be some evidence to justify the 
amount awarded.”).  We do not address the argument because even if we 
sustained it, the result would be a remand to the court of appeals to consider a 
remittitur.  See Bentley, 94 S.W.3d at 607-08.  As we explain below, our 
determination of other issues requires the case to be remanded for a new 
trial.
 
 
 
 
 
IV.  Evidentiary Issues
A.  Other Lawsuits, Verdicts, and Judgments
            
SCI challenges the trial court’s admission of evidence about other 
lawsuits, verdicts, and judgments against it.[3]  SCI asserts that the evidence was 
irrelevant.[4]
1.  Preservation of Error
            
The Guerras claim that SCI waived error because 
although SCI first raised objections to evidence of other suits, verdicts, and 
judgments by a motion in limine and objected when the 
evidence was introduced, SCI did not object when the Guerras’ attorney referred to the matters during jury 
selection and opening statement.  They cite Texas Employers Insurance 
Ass’n v. Schanen, 263 
S.W.2d 614, 615 (Tex. Civ. App.—San Antonio 1953, no writ), in support of their 
assertion that attorney’s statements made during jury selection must be objected 
to on pain of waiving error to the introduction of evidence during trial.
            
But in Schanen the trial court overruled 
a motion for mistrial based on questions propounded to and statements made by a 
potential juror during voir dire, even though the 
party moving for mistrial did not object to the questions or answers at the time 
they occurred.  The court of appeals analogized the situation to one in 
which evidence is received during trial without objection.  See id. 
at 614-15.  It held that in the absence of a 
timely objection, the trial court did not err in denying the motion for 
mistrial.  Id.
            
Schanen is inapposite.  SCI is not 
seeking a mistrial or complaining about matters that occurred during the jury 
selection process and to which it did not object; it is complaining about the 
admission of evidence during trial, to which it timely objected.  Error is 
preserved with regard to a ruling that admits evidence if the opponent of the 
evidence makes a timely, specific objection and obtains a ruling.  Tex. R. App. P. 33.1; Tex. R. Evid. 103; 
Bay Area Healthcare Grp., Ltd. v. McShane, 239 S.W.3d 231, 235 (Tex. 2007).  The 
failure to object to an attorney’s statements during voir dire of the jury panel, without more, does not waive a 
later objection to evidence offered during trial, because statements by lawyers 
during the jury selection process are not evidence.  SCI timely objected 
when evidence of other lawsuits was introduced and the Guerras do not argue otherwise.  SCI preserved 
error.  See McShane, 239 
S.W.3d at 235.
            
The Guerras also assert that SCI waived error 
by referring to the other lawsuits in its own opening statement.  This 
reference, the Guerras argue, “opened the door” to the 
evidence because if a party or the party’s attorney references a matter first, 
thereby “opening the door” by effectively inviting a response, then the opposing 
party is entitled to make an appropriate response.  See Sw. Elec. Power 
Co. v. Burlington N. R.R., 966 S.W.2d 467, 473 (Tex. 1998) (noting that a 
party may not complain on appeal of the admission of improper evidence if the 
party “opened the door” by introducing evidence that is the same or similar in 
character).  But here the Guerras’ attorney, not 
SCI’s attorney, was the first to allude to other lawsuits in opening 
statements.  The response of SCI’s attorney was not inappropriate in manner 
or substance: he acknowledged that other suits had taken place, but maintained 
that the trial should be about the Guerra family’s claims and the facts 
underlying those claims.  SCI’s attorney did not exceed the boundaries of 
the Guerras’ attorney’s statements or introduce new 
matters into the proceedings so that he invited a response.  SCI did not 
open the door or waive error.
2.  Relevance of the Evidence
            
We review a trial court’s decision to admit evidence for an abuse of 
discretion.  In re J.P.B., 180 S.W.3d 570, 575 
(Tex. 2005).  Evidence of other wrongs or acts is not admissible to 
prove character in order to show “action in conformity therewith.”  Tex. R. Evid. 404.  But it is 
admissible to show a party’s intent, if material, provided the prior acts are 
“so connected with the transaction at issue that they may all be parts of a 
system, scheme or plan.”  Oakwood Mobile Homes, Inc. v. Cabler, 73 S.W.3d 363, 375 (Tex. App.—El Paso 2002, pet. 
denied); see Tex. R. Evid. 
404.  This can be shown through evidence of similar acts temporally 
relevant and of the same substantive basis.  See Durbin v. Dal-Briar Corp., 871 S.W.2d 263, 268-69 (Tex. App.—El 
Paso 1994, writ denied), overruled, in part, on other grounds by Golden Eagle 
Archery, Inc. v. Jackson, 24 S.W.3d 362 (Tex. 2000).  We agree with SCI 
that the Guerras failed to demonstrate sufficient 
connection between the events in this case and the alleged actions in other 
lawsuits to show the other suits were admissible.
            
For most of the other suits referenced by the Guerras, only the plaintiffs’ petitions were admitted and 
testimony encompassed generalizations as to the different suits.  The Guerras assert such evidence was admissible because the 
other suits involved similar facts to those underlying their claim—double sale 
of a plot or moving a body without the family’s permission.[5]
            
As for the suits involving allegations that plots that had already been 
purchased and were sold a second time to someone else, the Guerras presented no evidence that those events were so 
connected to the events here that they were all part of a system, scheme, or 
plan.  For example, the Guerras provided the most 
details about a case involving Rudy Garza, who was buried at Highland Memorial 
Park in Weslaco in 1977.  Another family—the Rogers—purchased four 
side-by-side plots at Highland Memorial in 1982.  One of the plots was the 
plot where Garza was buried.  When a member of the Rogers family died in 
2002 and was to be buried, a Memorial Park employee discovered that Garza was 
buried in a plot that had been sold to the Rogers.  The cemetery employees 
tried to conceal the mistake, then asked Garza’s family 
for permission to move his body.  The family denied permission and the body 
was not moved.
            
The resale of Garza’s plot occurred in a different cemetery before it was 
owned by SCI Texas and nearly twenty years before the events in this case.  
There was no evidence that any of the same employees were involved in both the 
Garza case and the Guerras’ case, that the events were 
somehow connected, or that circumstances surrounding the sales were similar.
            
The Guerras presented few details about the 
other cases they alleged involved sales of plots that already belonged to 
someone else.  To the extent details were provided, they showed that the 
sales were at different cemeteries and each took place at least two years before 
the events underlying the Guerras’ case.  The 
area vice-president over Mont Meta at the time of Mr. Guerra’s burial was in 
charge of some of the other cemeteries when plots were sold twice, but there was 
no evidence he had any involvement in the sales or that anyone involved in the 
Guerra events was involved in the other sales.
            
The Guerras claim that the other cases were 
relevant to show a pattern of indifference amounting to a common scheme and show 
that SCI took no action to avoid recurrences of misconduct.  But without 
evidence of the actual facts and circumstances involved, the evidence does not 
show a sufficient connection to the events at issue to support their being 
relevant.  See Durbin, 871 S.W.2d at 268-69 (finding that a trial 
court abused its discretion in a workers’ compensation wrongful discharge case 
by excluding evidence of other retaliatory acts by a corporation involving the 
same supervisory personnel, the same workplace, and the same pattern of 
conduct).
            
In regard to suits with claims allegedly similar to the Guerras’ claim for moving Mr. Guerra’s body without 
permission, the trial court admitted evidence of one suit in which a body was 
moved without permission.  The evidence in that case showed that when 
Estella Cooper’s husband was buried in 2003 at Sunset Memorial Gardens in 
Odessa, a cemetery owned by SCI Texas, he was buried in the wrong plot.  
Cooper knew on the day of her husband’s burial that he was not being buried in 
the plot she had purchased, but she did not say anything.  When she later 
went to visit the grave, his body had been moved to the plot she had 
purchased.  Cooper testified that she sued “SCI” and a jury awarded her and 
her family $3.5 million.
            
Although both the Guerras’ 
case and the Cooper case involved cemetery employees moving a body without 
permission, that is where the similarities end.  The events occurred 
at different cemeteries and there was no evidence that any of the same employees 
were involved or that they occurred under similar circumstances.  The 
events also occurred more than a year apart.  There is no evidence that the 
events were part of a system, scheme, or plan.
            
We conclude that the trial court erred by admitting irrelevant evidence 
of other lawsuits, verdicts, and judgments.  We next consider whether the 
errors were harmful.
3.  Harm
            
An error in admitting evidence requires reversal if it probably caused 
the rendition of an improper judgment.  Tex. R. App. P. 61.1; Nissan Motor Co. v. Armstrong, 145 
S.W.3d 131, 144 (Tex. 2004).  In determining whether 
the error was harmful we evaluate the entire case from voir dire to closing argument, considering the evidence, 
strengths and weaknesses of the case, and the verdict.  Reliance Steel & Aluminum Co. v. Sevcik, 267 S.W.3d 867, 871 (Tex. 2008).  We 
also consider whether counsel emphasized the erroneous evidence and whether the 
admission of the evidence was calculated or inadvertent.  Id. at 
874; Nissan Motor Co., 145 S.W.3d at 144 (“[W]hether erroneous admission is harmful is more a matter of 
judgment than precise measurement.”).
            
The Guerras’ attorney colorfully and skillfully 
emphasized the evidence of suits, verdicts, and judgments against other 
cemeteries from voir dire through closing 
argument.  For example, during voir dire he asked 
some venire members who had family buried in Buena Vista cemetery which was 
owned by “SCI,” questions such as “have they ever from Buena Vista told you that 
they also had allegations and lawsuits filed against them in this county for 
selling plots when people were still -- were already buried in them?”  He 
commented in his opening statement about evidence that SCI illegally dug up 
bodies “not just in this case but you’ll hear others” and “[w]e’ll also be showing you again they have been involved in 
other lawsuits.”  During trial the Guerras’ 
attorney questioned SCI representatives about the suits, sometimes reading 
allegations from the pleadings which had been admitted as evidence.  And 
during closing argument, the Guerras’ attorney 
continued to emphasize the other lawsuits, verdicts, and judgments.  For 
example, he argued that “Odessa awarded $3.5 [million] to that lady who they did 
the same thing to in Midland.”  Manifestly, the Guerras’ attorney intended the evidence to be a significant 
and pervasive part of the trial.  See Reliance Steel, 267 S.W.3d at 
874 (“[A] party’s insistence on introducing inadmissible testimony ‘indicates 
how important he thought it was to his case.’” (quoting Alvarado v. Farah 
Mfg. Co., 830 S.W.2d 911, 917 (Tex. 2002))).
            
In this case there was no evidence three of the four plaintiffs suffered 
compensable mental anguish, yet the jury awarded each of the three mental 
anguish damages of $100,000.  Because there was no evidence to support a 
finding of compensable mental anguish, the jury’s findings must have been based 
on something other than properly admitted evidence, and we have no doubt that 
the extensive evidence of other suits, allegations in the suits, and similar 
evidence was a significant factor in the jury’s damages findings, both actual 
and punitive.  See id. at 872.  We 
conclude that the erroneous admission of evidence of other lawsuits, verdicts, 
and judgments was harmful and requires the case to be remanded for a new 
trial.
 
 
B.  Punitive Damages in a Trust
            
Although we have concluded that the case should be remanded for a new 
trial, in order to provide guidance to the trial court on retrial we next 
address SCI’s claim that the trial court improperly admitted evidence that Mrs. 
Guerra would put any punitive damages she received into a trust to pay for 
funerals for persons who could not afford them.[6]  See MCI Sales & Serv. v. 
Hinton, 329 S.W.3d 475, 495 n.19 (Tex. 2010).  
The questions and answers of which SCI complains are as follows:
Q.  
You’re also asking the jury to award punitive damages for this criminal behavior 
of theirs, correct?
A.  
Of course.
Q.  
But you don’t want a dime of that yourself do you?
A.  
No.
Q.  
In fact, you want that put in a trust to pay for people who are not able to 
afford their own funeral?
A.  
That’s right.
Q.  
That’s where any monies they award will go and you’ve got a trust set up to do 
that, correct?
A.  Yes, sir.
SCI claims 
that this evidence is irrelevant.
            
Evidence is relevant, and therefore admissible, if it has any tendency to 
“make the existence of any fact that is of consequence to the determination of 
the action more probable or less probable than it would be without the 
evidence.”  Tex. R. Evid. 
401, 402.  The purposes of punitive damages are to 
deter and punish culpable conduct.  Horizon/CMS Healthcare Corp. v. 
Auld, 34 S.W.3d 887, 896 (Tex. 2000); see Tex. Civ. Prac. & Rem. Code § 
41.001(5) (providing that exemplary damages, including punitive damages, are 
“damages awarded as a penalty or by way of punishment”).  The Legislature 
has set out several factors to be considered when determining the amount of 
exemplary damages.  These include the nature of the wrong, the character of 
the conduct involved, the wrongdoer’s degree of culpability, and the situation 
and sensibilities of the parties.  Id. § 
41.011.   Evidence about what Mrs. Guerra planned to do with 
any punitive damages was not relevant to proving any of these factors or to 
penalizing or punishing SCI.  See Tex. R. Evid. 401; see also 
Honeywell v. Sterling Furniture Co., 797 P.2d 1019, 1021 (Or. 1990) 
(“[I]nstructing a jury that a portion of any punitive 
damage award will be used to pay the plaintiff’s attorney or to contribute to a 
worthy cause, such as help for victims of crime, does nothing to further or even 
to inform the jury as to the proper goals of punitive damage awards.  
Instead, the instruction distracts the jury from the appropriate line of 
analysis that this Court has said a jury should follow in cases involving 
potential awards of punitive damages . . . .”).
            
The Guerras argue that the evidence was 
relevant to their claim for injunctive relief in which they requested SCI be required to fund a program to study and monitor their 
cemeteries and implement procedures to ensure proper record keeping.  But 
Mrs. Guerra’s plans to set up a trust to pay for funerals for people who could 
not afford them were simply not relevant to the issue of whether she was 
entitled to an injunction regarding monitoring of SCI cemeteries.
            
The Guerras also assert that the evidence was 
relevant to rebut SCI’s attorney’s statement during voir dire that the case was about the amount of 
damages.  We disagree.  During voir dire 
SCI’s attorney stated “[w]e are not fighting about the 
circumstances of what happened because we admit that it’s wrong, but how much 
money.”  That was simply a statement focusing the jury’s attention on the 
damages issues that would be submitted to them.  The statement did not 
change the focus of the jury to what the Guerras would 
do with any money they received.
            
The Guerras claim that SCI waived its complaint 
by offering similar evidence—evidence that SCI accommodates families who are 
needy—because a party may not complain on appeal of the improper admission of 
evidence if the complaining party introduced the same evidence or evidence of a 
similar character.  See Sw. Elec. Power Co., 966 
S.W.2d 467 at 473.  After Mrs. Guerra testified that she would put 
any punitive damages into a trust, SCI presented evidence that it has a program 
to help families who cannot afford funeral services.  SCI’s evidence was 
not exactly the same as Mrs. Guerra’s testimony, but in context it seems to have 
been an attempt to blunt the effect of her testimony about how she planned to 
use any exemplary damages.  Because the case will be remanded for a new 
trial for other reasons, we need not decide whether Mrs. Guerra’s testimony was 
harmful or whether SCI waived its complaint.  But for the trial court’s 
benefit on retrial we note that Mrs. Guerra’s testimony about what she planned 
to do with any punitive damages award was not relevant and was not 
admissible.
V.  Other Issues
            
SCI also claims that (1) the jury was improperly influenced by an 
improper “Golden Rule” argument in which it claims the Guerras’ attorney asked the jury to put themselves in the 
Guerras’ place and award what they would want to be 
awarded, and (2) because there was only one damages question based on three 
theories of liability, it cannot be determined whether the damages were 
supported by the one cause of action that SCI asserts was viable.  These 
issues may not recur during the new trial on remand and we do not address 
them.  See Columbia Rio Grande Healthcare, L.P. v. 
Hawley, 284 S.W.3d 851, 865 (Tex. 2009).
VI.  Conclusion
            
We reverse the judgment of the court of appeals.  We render judgment 
that (1) Julie, Gracie, and Mary Ester take nothing from SCI International and 
SCI Texas and (2) Mrs. Guerra take nothing from SCI International.  Mrs. 
Guerra’s claim against SCI Texas is remanded for a new trial.
 
 
                                                                        
________________________________________
                                                                        
Phil Johnson
                                                                        
Justice
 
 
OPINION DELIVERED:  
June 17, 2011






[1] 
Gaspard died after the meeting with the Guerra 
family.

[2] 
The Guerras did not 
assert veil-piercing theories such as alter ego or use of the corporate form to 
perpetuate a fraud.

[3] 
The SCI entities also challenge admission of 
evidence of other lawsuits and allegations of wrongdoing against SCI 
International.  That evidence, involving cemeteries outside Texas, was 
similar to the type of evidence of other suits that was admitted against SCI 
Texas—but more inflammatory.  It included allegations made in class-action 
pleadings, settlements, allegations of criminal wrongdoing, newspaper articles 
involving various allegations, reports of interviews with persons involved, and 
facts that for the most part were not similar to those involving the Guerras, and did not involve any of the Mont Meta employees 
who dealt with the Guerras, nor the decisions and 
actions taken to move Mr. Guerra’s body.  And at least some of the events 
described took place before SCI Florida, an SCI 
International subsidiary, owned one of the cemeteries involved in the other 
suits.
                
    Our failure to address the admission of that evidence 
should not be taken as approval of its admission.  We do not address it in 
depth because SCI International will not be part of the trial on remand and the 
evidence was not connected with SCI Texas except through SCI Texas’s 
relationship to SCI International.

[4] 
SCI also asserts that the admission of this 
evidence unconstitutionally impacted punitive damages.  We do not address 
this constitutional issue because we only decide constitutional questions when 
we cannot resolve issues on other grounds.  In re 
B.L.D., 113 S.W.3d 340, 349 (Tex. 2003).

[5] 
The Guerras also claim 
that other suits involving burial of a body in the wrong space were similar to 
the facts of this case.  But this case did not involve burial of a body in 
the wrong space.  Mr. Guerra was buried in the space his family selected 
and purchased for him.  Therefore, evidence of those suits was not 
admissible to show part of a system, scheme, or plan.

[6] 
SCI also asserts that the admission of this 
evidence violates due process.  We do not address the constitutional 
question.  See In re B.L.D.,113 S.W.3d at 
349.